DORSETT v. CLEMENT-ROSS MANUFACTURING CO.

(Filed November 11, 1902.)

1. RELEASES—*Fraud—Questions for Jury—Evidence—Sufficiency—Contracts.*

In this action for personal injuries, a release being set up and there being more than a scintilla of evidence tending to show fraud, the question of fraud in procuring the release was properly left to the jury.

2. RELEASES —*Consideration —Inadequacy —Evidence —Fraud — Contracts.*

Inadequacy of consideration alone is not sufficient to set aside a release, unless such consideration is so inadequate as to shock the moral senses, but it may be considered along with other evidence as tending to show fraud.

3. EVIDENCE—*Impeachment of Witnesses—Releases—Contracts.*

Where a person seeks to avoid a release on account of fraud, it is competent to impeach a witness, to ask him on cross-examination whether he had not witnessed several other releases of the same character for the same party.

4. MASTER AND SERVANT—*Negligence—Pleadings—Assumption of Risk—Personal Injuries.*

In an action for personal injuries, the defense of assumption of risk must be pleaded.

5. MASTER AND SERVANT—*Questions for Jury—Negligence.*

Where there is evidence tending to show that an injured employee did not have a reasonably safe place to work, the question whether the place was reasonably safe was properly left to the jury.

6. EVIDENCE—*Sufficiency—Master and Servant—Negligence.*

In an action by an employe for personal injuries, evidence that five other persons, working at the same place and at the same work, had been caught by the same cog-wheels, was competent.

ACTION by Arthur Dorsett against the Clement-Ross Manufacturing Company, heard by Judge *Thos. J. Shaw* and a

jury, at April Term, 1902, of the Superior Court of DAVID-
SON County.     From a judgment for the plaintiff, the defend-
ant appealed.

*Emery E. Raper,* for the plaintiff.
*P. H. C. Cabell,* and *Glenn, Manly & Hendren,* for the de-
fendant.

FURCHES, C. J.     The defendant is a corporation en-
gaged in manufacturing veneering, and the plaintiff was an
employee of defendant at the time he received the injury
complained of, and this action is brought for damages.

The plaintiff alleges that his business at the time of the in-
jury (as it had been for the past four or five days) was to
hoist logs or blocks by means of a sweep, to which was at-
tached a block and tackle; that the blocks were raised in this
way from the floor of the building, a distance of some four
feet, swung around to the machine and then fastened; that
it was also a part of his duty to sweep them off with a broom,
which was kept hanging on the post of the sweep or crane for
that purpose; that he had just hoisted a block, placed it upon
the machine, swept it off, and was in the act of hanging up
the broom, when he was injured.     This machine consisted of
a large knife or blade that cut or pared the veneering from
the blocks as they were made to revolve by means of powerful
cog-wheels.     These cog-wheels were on a piece of shafting,
four feet and one inch from each other, and about 17 inches
in diameter, and worked by other smaller cog-wheels.     The
evidence further tends to show that the space in which the
plaintiff had to stand to do his work, was about four feet long
and about eighteen or twenty inches wide, and in this space
stood the post of the crane, on which the broom hung.     These
cog-wheels were not boxed or covered, and as the plaintiff
turned and was in the act of hanging up the broom, his coat

sleeve was caught in the exposed cog-wheels, which had been put in motion, his arm drawn in and so badly mangled that it was necessary to amputate it near the shoulder joint. It was no part of the plaintiff's duty to start or run the machine. The plaintiff alleges that his injury was caused by the negligence of the defendant, and without fault or negligence on his part.

The principal ground complained of as negligence on the part of the defendant, was the limited space the plaintiff had to work in, and the uncovered condition of the cog-wheels, which, he says, could have been easily covered without affecting the running or the efficiency of the machine.

The defendant answered the complaint, and admits the injury, and that the cog-wheels mentioned in the complaint were uncovered, but denies that it was due to the carelessness or the negligence of the defendant that they were not covered; that it was neither careless nor negligent, not to have them covered, and alleges that the plaintiff was injured by reason of his own carelessness and negligence.

The defendant also pleads, in discharge of any right of action the plaintiff may have had against it on account of said injury, a release and discharge given the defendant by the plaintiff since he received the injury. To this release the plaintiff replied, and alleged that it was procured by fraud, deception and undue influence.

This presents the first question for our consideration, as it is a bar to the plaintiff's right to recover, whatever the merits of his case may be, unless it is set aside. And it is not for us to say whether it was properly procured or not. This was a matter for the jury, if there was such evidence as to authorize the Court in submitting the question to them, and as to whether evidence was allowed to go to the jury over the objection of the defendant, that ought not to have been allowed, or that the Judge erroneously in structed the jury as to the

law involved in the trial of the issue, or refused properly to instruct the jury when requested to do so.   And it is not our duty to undertake to reconcile conflicting testimony, nor to say what weight or credit should be given to such testimony. Indeed, in considering this question as to whether there was evidence reasonably tending to establish fraud in procuring the release, we can only consider that which tends to show fraud, as the jury might have believed it and not have believed that tending to disprove fraud.   But this evidence must be more than a scintilla, more than to raise a suspicion or belief, but it must be such, if believed, as ought to satisfy a reasonably fair mind that the release was not obtained fairly, and it was not without consideration.   *Harding v. Long,* 103 N. C., 1; 14 Am. St. Rep., 775.

It therefore becomes our duty to examine this question upon the evidence in the case, which tends to show fraud in its procurement.   The plaintiff says it does not have the appearance of a business transaction, in which parties are expected to deal on equal terms; that the plaintiff was not consulted as to the terms of this contract (release) ; that it was prepared in Thomasville by the agent of the defendant without his knowledge, and that the terms were fixed by the defendant or its agent without the knowledge or consent of the plaintiff; that the release being prepared on the 18th of March (the plaintiff having been injured on the 5th day of February), the superintendent, Finney, of defendant's factory, and Dr. Julian, the physician of the defendant who amputated the plaintiff's arm and attended him while sick from the injury go to the plaintiff's house, two and a half miles in the country, *to get him to sign it;* when they got to plaintiff's, he was at the barn, and the following is the plaintiff's statement of what occurred: "Finney did not ask me what doctor I wanted.   I told him I wanted Dr. Mock.   I live two and a half miles from Thomasville; was in the barn pushing back hay.   Julian and Finney

came in Julian's buggy.   Julian spoke, and said, 'What are you doing up here?' and I spoke and said a few words, and one of them said, 'Come down, I want to talk with you,' and I went down, and we went up to the bars, and Finney said, 'You were up the other day to get money to get clothes?' and I said 'Yes, sir'; and he said, 'We have a paper here for you to sign, so the doctors can get up their money.'   And Dr. Julian said, 'Yes, Dr. Hill is pushing on me, so is Dr. Bird; you will sign the paper so we can get our money, and they will pay you $15 for your time.'   I said I would rather not do that now—would rather see Mr. Clement, the man that owned the factory, and Dr. Julian said, 'There is Mr. Finney, he will do as well,' and he did not think Mr. Clement would do any better than that, and pay me my time like he had done all the rest of the boys; and we talked on a while, and I said, 'I would rather go and see my wife.'   Dr. Julian said, 'Aren't you twenty-one years old?   She has nothing to do with it.' " He says nothing was said to him about its being a release, and he thought it was a paper to enable Dr. Julian to get his money, and to pay him $15 for lost time when he was not able to work.   He says the paper was partly read over to him, and he will not say it was not all read; but if it was, he did not understand it to be a release of defendant's liability to him for damages; that he is an ignorant man, and can not read or write, except his name.   This paper was not required to be probated and registered, but after the plaintiff had signed it, and Finney and Julian had witnessed it, they would not pay him the $15 until he went before a Notary Public and acknowledged the same.   The release is stated to be in consideration of $95 paid the plaintiff, when it is admitted that he was only paid $15.   This they undertake to explain by saying that the other $80 was paid Dr. Julian for medical services in amputating the plaintiff's arm and attending him while sick from the injury.   But Dr. Julian says that his

bill was against the defendant, that *plaintiff owed him noth-ing,* and he thought Finney would have paid him any bill he would have presented to him.

Taking this evidence to be true, taking it as uncontradicted, as we must do in passing upon this question, we can not say it should not have been left to the jury to say what it proved. *Cox v. Railroad,* 123 N. C., 604; *Harding v. Long,* 103 N. C., 1; 14 Am. St. Rep., 775. We say this, recognizing the law to be as contended by defendant, that an instrument of writing should not be set aside for fraud, unless the fraud is fully established. And that where a party to the writing can read, and has the opportunity and does not do so, no other circumstances occurring or connected therewith, the party signing can not have the instrument set aside upon the ground that he was deceived as to its contents; and the party that can not read and does not ask that the paper be read, is in the same fix as if he could read and did not do so. But where a party can not read, and the paper is read to him incorrectly, falsely, the signer may have it set aside for fraud. *Cutler v. Lumber Co.,* 128 N. C., 477.

In this case, the plaintiff can not read, and, taking his evidence to be true, the paper was not all read to him, or it was not correctly read, as he says he heard nothing said about a release, and thought from what he heard that he was sign-ing a certificate to enable the doctor to get his pay, and to get $15 pay for the time he had lost on account of the injury.

The fact that the release was prepared upon the terms fixed by the defendant, without the knowledge or concurrence of the plaintiff, and sent out there by the defendant's agent, Finney, and Dr. Julian, who had so recently successfully treated the plaintiff, an ignorant man likely to be influenced by the doctor; and the fact that the doctor participated in urging him to sign the paper in order that *he might get his pay,* when he admitted his bill was against the defendant,

and he thought the defendant would pay any bill that he would present to it, and the fact that he objected to the plaintiff seeing his wife before he signed the paper, and that they had him to go and acknowledge it before a Notary Public before they would pay him the $15—are such things as do not ordinarily take place in open, fair and even-handed transactions. And while we are of the opinion that written contracts entered into with deliberation, where the parties are at "arm's length" and on even terms with each other, should not be disturbed upon slight evidence, we must hold (looking at the plaintiff's evidence as we should) that the Court committed no error in submitting this issue to the jury.

Nor do we see that the Court erred in its instructions to the jury, nor in refusing to give instructions not substantially given in the charge. The Court charged the jury that the plaintiff admitted he signed the release, and "unless the *plaintiff* has shown by the greater weight of the evidence that its execution was fraudulently procured by the defendant's agents, you will find this issue 'No.'" This, we think, taken in connection with the rest of the charge, was a correct instruction, and substantially covered that part of the defendant's prayers upon this issue that were proper and were not given.

It is true that inadequacy of consideration alone is not sufficient to set aside a written instrument, "unless the consideration is so inadequate as to shock the moral senses and cause reasonable persons to say he got it for nothing." But it is proper evidence to be considered upon an issue of fraud, and may, in connection with other evidence and circumstances tending to show fraud, be sufficient to establish the fraud and to set aside the instrument. *McLeod v. Bullard,* 84 N. C. 515. And the rule to be observed in cases where the validity of the instrument is attacked upon the ground of fraud, is the preponderance or the greater weight of the

evidence. *Harding v. Long,* 103 N. C., 1; 14 Am. St. Rep., 775; where the distinction is drawn between cases for the reformation of the instrument and those sought to be set aside for fraud.

But taking the plaintiff's evidence to be true, it would seem that there was *no real consideration* to support this release. He says that $80 was to be paid to Dr. Julian for his medical services; and Dr. Julian testified that the plaintiff owed him no medical bill, that he was employed by the defendant, and his bill was against the defendant; and the plaintiff says that the $15 he got was for the time he lost on account of the injury.

Dr. Julian, a witness for the defendant, who participated in procuring the release, was asked, on cross-examination, if he had not witnessed several other releases of this character for the defendant. This question was allowed, and the defendant excepted. It was evidently intended as an impeaching question, and for that purpose it was not improperly allowed.

This leaves the question of negligence to be determined. The Court refused to submit an issue, or to give the defendant's prayer for instruction, as to the voluntary assumption of risk by the plaintiff, upon the ground that it was not pleaded. It has been held by this Court that the voluntary assumption of risk is like contributory negligence in this respect, that it is a plea in the nature of confession and avoidance. *Bolden v. Railroad,* 123 N. C., 614. And this being so, like contributory negligence, it must be pleaded, and the burden of proof to sustain it is on the defendant. We do not think this conflicts with *Rittenhouse v. St. Railway Co.,* 120 N. C., 544. It is not held in that case that it was not necessary to plead voluntary assumption of risk, but this defence might be submitted in the same issue with that of contributory negligence. But this practice has since been condemned by the Court, with

a suggestion that it is better to submit a separate issue as to assumption of risk, when it is pleaded. The decision in Rittenhouse's case upon this point was only a ruling as to a matter of practice, and not as to the substance of the matter at issue. Only such issues should be submitted as are raised by the pleadings. And this defence was not pleaded, and there was nothing in the pleadings upon which to base such an issue. If it had been pleaded, it would have been the duty of the Court to submit the issue; but it can not be error not to do so, when it was not pleaded. What effect it would have had upon the trial if it had been pleaded and an issue submitted, we can not say, as the Court charged the jury "that when one person enters into the employment of another, he assumes such risks as are ordinarily incident to his employment." All such machinery as this was is to some extent dangerous, but this alone does not make the owner and employer liable for damages. But it is the negligence of the defendant in not providing safe machinery and a reasonably safe place for the employee to work. And the general rule is that if the employer furnishes such machinery as is in general use, this is sufficient. He is not bound to provide the latest and most improved machinery. It was not shown that this was such machinery as was in general use, but it was shown that it was a "standard machine," which may mean that it was such as was in general use. But the question does not entirely depend upon this. Standard machinery may be more than ordinarily dangerous, if not properly or suitably located so as to enable the employees to do their work with reasonable safety, and it is the duty of the employer to do this. *Myers v. Lumber Co.,* 129 N. C., 252.

It is difficult for us to understand this so well as the jury who heard the evidence and tried the case. The evidence discloses the fact, as we understand it, that there was an open space some four feet long and eighteen or twenty inches wide

for the plaintiff to stand in to work a sweep or crane, to which was attached a block and tackle, by which he was to raise heavy logs or blocks, and to swing them over and upon the veneering machine, run by these powerful cog-wheels. It was in evidence that a person could work there without getting hurt, but it was also in evidence that five other persons, working in this place and doing the same work the plaintiff was doing, had been caught in these cog-wheels. A man engaged in such work can not always be on special guard against such danger. It seems to us that the five similar cases, which had occurred before, would have been sufficient notice to an ordinarily prudent man that there was something wrong, and would have caused him to provide against it by enlarging the space or covering the cog-wheel. The evidence, we think, tends to show that it was not a reasonably safe place to work, with those powerful cog-wheels uncovered. And this is all we have to decide, that there was evidence tending to show this, and then it was a question for the jury. *Cox v. Railroad,* 123 N. C., 604.

This case is easily distinguished from *Ausley v. Tobacco Co.,* 130 N. C., 34. There, voluntary assumption of risk was pleaded, and the case is put upon that ground; but the facts in that case are entirely different from this. The cog-wheel in that case was seven feet above the floor, put there by the plaintiff, who was employed to superintend and run the machine. The plaintiff stumped his toe and fell on the wheel, and it was but an accident, if he had not voluntarily assumed the risk.

The defendant objected to the question asked by the plaintiff to show that other persons had theretofore been caught by these cog-wheels, working at the same place and at the same work the plaintiff was. But we think this evidence was competent for the purpose of showing the dangerous location and situation of the place furnished the plaintiff to work in, and

to fix the defendant with notice of such danger. The plaintiff says that he had not been there long, and had not heard of the others being caught by these wheels when he was hurt.

It seems to us that the question of contributory negligence was fairly submitted to the jury, and upon a review of the whole case we see no error. The judgment is

Affirmed.