CHARLES BRAZILLE v. CAROLINA BARYTES COMPANY.

(Filed 20 December, 1911.)

1. Damages—Release—Mental Incapacity—Evidence—Husband and Wife.

To set aside a release for damages for personal injuries received, on the ground that the plaintiff was suffering severely from the effects of his injury at the time of its execution and did not have sufficient mental capacity, it is competent for his wife to testify as to his mental incapacity then.

2. Master and Servant—Dangerous Instrumentalities—Safe Place to Work—Appliances—Evidence—Nonsuit.

Upon evidence tending to show that the plaintiff, an uninstructed and inexperienced man, was injured while blasting with dynamite in the employment of the defendant, using an iron tamping rod furnished him and the other employees, which resulted in the explosion causing the injury, a motion to nonsuit should be denied.

3. Damages—Release—Mental Incapacity—Pleadings—Sanity—Evidence—Estoppel.

In an action for damages for a personal injury alleged to have been caused by the negligence of the defendant, the plaintiff sought to set aside a release from further liability, on the ground of his mental incapacity, caused by the injury, at the time of executing the release: *Held,* it was unnecessary for plaintiff to allege and prove sanity since that time to maintain his action, and the doctrine of estoppel would rather apply to defendant, who alleged his sanity at the time of the release.

4. Negligence—Instructions—Confusing—Appeal and Error.

When damages are sought for a personal injury alleged to have been negligently inflicted, a request for special instruction

on the question of contributory negligence is confusing and should be refused, which directs an affirmative answer, if the jury found as a fact that the plaintiff "was negligent in any degree."

5. **Master and Servant—Dangerous Instrumentalities—Instructing Servant—Negligence—Evidence—Instructions.**

Upon the evidence in this case tending to show that plaintiff, an inexperienced man, was employed without instruction to blast with dynamite, using an iron tamping rod furnished him for the purpose, which caused the explosion inflicting the injury complained of: *Held,* not error to refuse a request for instruction, that if the jury believed the evidence to answer. in the affirmative the issue of contributory negligence.

6. **Release—Fraud—Evidence.**

*Held,* evidence sufficient to be submitted to the jury upon the issue of defendant's fraud in obtaining a release for personal injuries alleged to have negligently been inflicted on the plaintiff, which tends to show that the plaintiff signed the release while greatly suffering from the injury, just after he had left the hospital where he had been for treatment; that his wife and brother were excluded from the room at the time; that he was ignorant and humble, unable to read and write; that he was without advice and counsel of friends, and thought he was signing a receipt for his wages; that the consideration was grossly inadequate.

7. **Master and Servant—Dangerous Instrumentalities—Contributory Negligence—Assumption of Risks—Burden of Proof—Evidence.**

An inexperienced servant was employed to blast with dynamite, and furnished with iron tamping rods for the purpose, the evidence tending to show that the use of these tamping rods caused the explosion causing the injury complained of. A charge *Held* correct, that "Unless the jury find by the greater weight of the evidence that the plaintiff knew of the great danger in using iron tamping rods, and voluntarily and willingly made up his mind to run the great risk incident to using the same, you will answer the issue 'No,'" and that recovery would not be denied unless in the use of the tamping rod the apparent danger was so great that its assumption would amount to a reckless indifference to probable consequences.

8. **Master and Servant—Dangerous Instrumentalities—Assumption of Risks—Evidence.**

The servant assumes the risks ordinarily incident to his employment, but does not assume the risk from dangers which

arise from the failure of the master to furnish reasonably safe and suitable tools with which to do the work required of him, unless in the careful performance of the work with the tools furnished the inherent probabilities of injury are greater than those of safety.

**9. Instructions—How Construed—Appeal and Error.**

When, construed as a whole, the charge of the trial judge is correct. a fragmentary part objected to will not be held reversible error.

**10. Appeal and Error—Stenographer's Notes—Contentions—Immaterial Matter—Costs.**

When, at the instance of a party, the trial judge sends up on appeal the contentions of the parties, not needed to enlighten the Court, and puts in a large part of the testimony in the form of stenographer's notes instead of in narrative form, which was excepted to, the unnecessary matter will be estimated and taxed against the party at whose instance they were incorporated into the record on appeal.

APPEAL by defendant from *Lane, J.,* at October Term, 1911, of MADISON.

*Guy V. Roberts, W. W. Zachary, and Moore & Rollins for plaintiff.*
*Martin & Wright for defendant.*

CLARK, C. J.    This is an action to recover damages for personal injuries.   The plaintiff alleges that the company furnished him and other employees iron tamping rods to be used in tamping dynamite, and while so being used the iron tamping rods caused an explosion which seriously and permanently injured the plaintiff.   He further alleges that in a few days after his return from the hospital, and while blind, and suffering in mind and body from said injuries, and mentally incompetent and incapable of transacting any business, the defendant company by fraud and false representation secured his signature to an alleged release.   The defendant denied that the release was procured by fraud and alleged that the plaintiff was competent to transact business at the time it was signed.   There was evidence that the plaintiff was an inexperienced miner and did not know the danger of using the iron tamping rods; that the defendant knew that it was highly dangerous to allow its employees to use

BRAZILLE *v.* BARYTES CO.

them, but decided to take the risk, as the company could get along faster and do more work. The jury found in response to the thirteen issues submitted to it that the plaintiff was injured by the negligence of the defendant company; that he was not guilty of contributory negligence; that he did not assume the risk; that he was not injured by the negligence of a fellow-servant; that the plaintiff did not have sufficient mental capacity to execute the release; that the defendant had knowledge of plaintiff's mental incapacity; that the release was obtained by fraud and fraudulent representation, and that the amount ($372) paid the plaintiff at the time he signed the release· was not a fair and reasonable consideration, and assessed the plaintiff's damages at $4,850.

The first exception is because the plaintiff's wife was allowed to testify as to his mental incapacity the day he signed the release. This was competent. *Stewart v. Stewart,* 155 N. C., 341; *Clary v. Clary,* 24 N. C., 78; *Whitaker v. Hamilton,* 126 N. C., 466; *Horah v. Knox,* 87 N. C., 485; *Bost v. Bost, ib.,* 479.

Exception 2, for refusal of the motion to nonsuit, cannot be sustained. Exception 3 is because the court did not set aside the verdict, upon the motion of the defendant, on the ground that the jury having found the plaintiff mentally incompetent when he signed the release, and he having failed to allege and prove sanity since, he could not bring this action. If there was estoppel it was fully as much upon the defendant, who had alleged in its answer that the plaintiff had mental capacity. It is true, the jury found that the plaintiff was incompetent to sign the release 23 December, 1909, by reason of his physical and mental suffering at that time caused by his injuries, but there was no presumption that such suffering with the consequent mental and physical inability to attend to business continued down to the time of the trial, in October, 1911. Exception 4 was because the court signed judgment upon the verdict.

Exception 5 is because the court refused to instruct the jury that if "the plaintiff was negligent in any degree, and this was the proximate cause of his injury, they will answer the tenth issue 'Yes.'" An instruction that if the plaintiff was "negligent in any degree" would simply confuse the jury, and has

been condemned in another case at this term. Beach Con. Neg., secs. 21-26; Thompson Negligence, secs. 170, 171, 172, and 267; 7 A. and E. Enc., 383. The court properly refused to instruct the jury that if they believed the evidence to answer the tenth issue "Yes," and also in refusing to instruct the jury to make the same response if the plaintiff knew the danger of using an iron tamping rod. These are the 6th and 7th exceptions. In lieu of them the instruction of the court on these propositions was in accordance with our precedents.

The 8th, 12th, and 13th exceptions are because the court refused to instruct the jury to answer the issue as to fraud in obtaining the release in the negative. There was evidence tending to show fraud which was sufficient, if believed by the jury, to justify the finding of the issue in the affirmative. Among them was the evidence that the plaintiff's wife and brother were not permitted to be present in the office when the release was signed, but were left outside in the cold; that the release was executed in a few days after the plaintiff left the hospital, and while he was suffering great pain and mental anxiety occasioned by his injuries; that plaintiff was ignorant and unable to write, blind, and his hearing badly impaired; that, as he testified, he thought that he was giving a receipt for wages; that he had no friends or counsel to advise him; that the consideration paid was $372, whereas the jury found that $4,850 was reasonable and just compensation. These and other circumstances were sufficient to carry the case to the jury and justify its finding. *Hayes v. R. R.,* 143 N. C., 128; *Dorsett v. Manufacturing Co.,* 131 N. C., 259; *Bean v. R. R.,* 107 N. C., 746.

The 9th exception is because the court modified an instruction asked by the defendant, that if the accident was caused by the manner in which the hole was loaded, to answer the issue as to the defendant's negligence "No," by adding: "If this was not a reasonably safe way of loading a hole."

Exception 10 is because the court instructed the jury "that it was the duty of the employers to instruct their employees in the use of dangerous machinery or dynamite before assigning them to such duty." This instruction was proper. *Horne v. R. R.,* 153 N. C., 239. Exception 11 was on substantially the same grounds.

Exception 14 is because the court charged the jury that if they found that the consideration paid for the release was grossly inadequate, that this was a circumstance which they could consider in passing upon the fourth issue, as to fraud in procuring the release. This charge was in accordance with *Dorsett v. Manufacturing Co.*, 131 N. C., 259.

Exception 15 is because the court charged the jury, "That unless you find by the greater weight of the evidence that the plaintiff knew of the great danger in using iron tamping rods, and voluntarily and willingly made up his mind to run the great risk incident to using the same, then you should answer the twelfth issue 'No.'" This charge is in accordance with *Hicks v. Manufacturing Co.*, 138 N. C., 320; *Lloyd v. Hanes,* 126 N. C., 359.

Exception 16 is because the court charged the jury "that the use of an iron tamping rod, if it was obviously dangerous, will not prevent the plaintiff from recovering from an injury resulting therefrom unless the apparent danger was so great that its assumption would amount to a reckless indifference to probable consequences." This is practically the language used by the Court in *Coley v. R. R.*, 129 N. C., 411.

Exception 17 is because the court charged "That the servant assumes the risk ordinarily incident to his employment, but he does not assume the risk from dangers which arise from the failure of the master to furnish his servant reasonably safe and suitable tools with which to do the work required of him unless in the careful performance of the work with the tools furnished the inherent probabilities of injury are greater than those of safety." The defendant admits that this language is substantially what was said in *Hicks v. Manufacturing Co.*, 138 N. C., 319.

The 18th and last exception is because the court erred in instructing the jury, "Where the master fails in his duty to the injured servant, this failure is the proximate cause of the injury; the fact that the negligence of a fellow-servant also commingles with it as a proximate cause will not exonerate the master from liability." This exception cannot be sustained. Thompson on Negligence, secs. 4856, 4857, 4858.

This Court said in *Ramsey v. R. R.,* 91 N. C., 418: "The charge of the court, when properly considered as a whole, was in accordance with the principle settled in the cases just cited. We are not permitted to select detached portions of the charge, even if in themselves subject to criticism, and assign errors as to them, when, if considered with the other portions of the charge, they are readily explained and the charge in its entirety appears to be correct. Each portion of the charge must be construed with reference to what precedes and follows it."

The defendant excepted at the time of settling the case on appeal "for that the court, at the instance of the plaintiff, sent up the contentions of the parties as a part of the charge, and put in a large part of the testimony in the form of stenographer's notes, instead of in narrative form.". This exception was in accordance with the provisions of Rule 22 of this Court, 140 N. C., 494, and complies with the repeated decisions thereon. *Cressler v. Asheville,* 138 N. C., 482. As there was no point made on the judge's reciting the contention of the parties, and they were not needed to enlighten the Court as to any of the exceptions, it was unnecessary to send them up, and it was also improper to send the stenographer's notes up in the form of question and answer, but the evidence should have been stated in narrative form, as we have so often ruled. The unnecessary matter thus sent up, we estimate at 40 printed pages, the cost of copying and printing which will be taxed against the appellee, as provided in Rule 22. *Land Co. v. Jennett,* 128 N. C., 3.

No error.