W. L. LLOYD v. SOUTHERN RAILWAY COMPANY ET AL.

(Filed 20 May, 1914.)

1. Removal of Causes—Appeal and Error—Exceptions—Plea to Jurisdiction.

Where the Superior Court has ordered a cause removed to the Federal court upon the petition and bond of a nonresident defendant, to which the plaintiff excepted and appealed, resulting in a reversal of this judgment upon the ground of the insufficiency of the petition, the defendant may not enter a plea to the jurisdiction of the State courts to entertain the cause and have the matter determined again.

LLOYD *v.* R. R.

2. Federal Employers' Liability Act—Damages—Contributory Negligence—Trials—Issues.

Damages for a personal injury inflicted on the employee by the master under the Federal Employers' Liability Act are considered upon the issue of damages alone, rendering unnecessary a separate issue as to contributory negligence and the amount to be consequently deducted; and the refusal of the trial court to submit such an issue to the jury was proper.

3. Master and Servant—Assumption of Risks—Duty to Inspect and Report—Duty of Master—Negligence.

Where it is the duty of a locomotive engineer to inspect his engine before taking it upon his run in the company's service, and to report any defects to the repair department, and, preparatory to making his run, he is injured while inspecting the engine, just received from the repair shop, by reason of a defect in its machinery unknown to him, the question of assumption of risks is not presented, it not being the duty of the engineer to repair the engine; and the company is responsible in damages for the injury if directly and proximately caused by the defective condition of the engine, it being its duty, by the exercise of proper care, to furnish its employee with a reasonably safe place to work and reasonably safe appliances with which to do it.

4. Master and Servant—Safe Appliances—Duty of Master—Inspection—Negligence—Trials—Burden of Proof.

The plaintiff, an engineer on defendant's railroad, was injured while inspecting his locomotive or in operating a defective lever thereon, while making the inspection, and in his action to recover damages for personal injuries inflicted on him, a charge by the court to the jury is held correct which requires the plaintiff to show by the preponderance of the evidence that the defendant knew of the defect, or should have known thereof by exercising a reasonable inspection thereof.

5. Appeal and Error—Brief—Exceptions Abandoned.

Exceptions appearing in the record of the case on appeal, and not set out in the brief, or in support of which no reason or argument is stated or cited, are deemed abandoned on appeal. Rule 34.

6. Master and Servant—Federal Employers' Liability Act—Trials—Instructions—Issues—Damages.

Where an action for damages for a personal injury is brought under the Federal Employers' Liability Act, which does not bar the plaintiff's right to recover if he has been guilty of contribu-

tory negligence, but permits it to be considered only in diminution of damages, an instruction upon the question of contributory negligence should be addressed to the issue of damages, or it will not be considered.

7. **Master and Servant—Federal Employers' Liability Act—Interstate Commerce.**

Where an injury is received by an engineer of a railroad company while examining his engine preparatory to taking an interstate train upon its usual run, an action for damages for the injury alleged thus negligently to have been inflicted comes within the meaning of the Federal Employers' Liability Act; for it is not required that the engine be coupled with a train actually employed at the time in carrying interstate commerce.

8. **Master and Servant—Federal Employers' Liability Act—Railroads — Lessor Roads — Interstate Commerce — Liability of Lessor Roads.**

In this case it is held that the North Carolina Railroad Company, having leased its roadway .to the Southern Railway Company necessarily in contemplation of its lessee road engaging in *interstate commerce, and* providing the necessary spur or lateral tracks for the purpose, is liable for an injury negligently inflicted by the lessee company on its employee, under the Federal Employers' Liability Act, while he was engaged in its interstate commerce, and the lessor road is a proper party to the action.

9. **Pleadings—Assumption of Risks—Issues—Trials—Courts.**

In order for a defendant to avail itself of the defense of assumption of risk, it must, under our practice, be specially pleaded in the answer, and an issue should be tendered thereon unless it is submitted by the court on its own motion.

10. **Removal of Causes—Petition—Fraudulent Joinder—Allegations —Jurisdiction—Questions for State Courts.**

The complaint in an action against joint tort feasors determines, upon allegations made in good faith, whether the action shall be joint or several; and where one of the defendants is a nonresident of the State and files a petition and bond for the removal of the cause to the Federal court for diversity of citizenship, upon the ground of fraudulent joinder of the resident defendant, he should allege such facts as to raise the issue of fraud to be tried in the Federal jurisdiction, or the jurisdiction will be retained by the State court, which will determine for itself whether the allegations of the petition are sufficient in law to raise the issue of fraudulent joinder before surrendering its jurisdiction of the cause.

APPEAL by defendant from *Shaw, J.,* at September Term, 1913, of GUILFORD.

This is an action to recover damages for injuries alleged to have been caused by defendant's negligence. The case was before us at a former term, and is reported in 162 N. C., 485. Several of the questions now presented were then decided adversely to the defendants, and we will not consider them again upon a second appeal. *Latham v. Fields, post.* We held before, that the cause was not removable to the Federal court. Defendant, when the case was called for trial, entered a plea to the jurisdiction, based upon the ground that at the former trial the lower court had ordered the case removed, and that in compliance with said order a true transcript of the record in the case, properly certified and accompanied by a sufficient bond, had been filed and the case docketed for trial in the Federal court. But it appears that when the court ordered the removal an exception to the order was reserved by the plaintiff, who brought the matter to this Court for review by appeal, and we reversed the order of removal, and remanded the case for trial in the court below. The case accordingly proceeded to trial and resulted in the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, the Southern Railway Company, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff, at the time of receiving such injury, engaged as an employee of the Southern Railway Company in interstate commerce? Answer: Yes.

3. Was the North Carolina Railroad Company, at the time of the alleged injury of plaintiff, engaged in interstate commerce? Answer: No.

4. What damage, if any, is plaintiff entitled to recover of the Southern Railway Company? Answer: $12,500.

5. What damage, if any, is plaintiff entitled to recover of the North Carolina Railroad Company? Answer: Nothing.

Judgment was entered thereon for the plaintiff, and the defendant excepted and appealed.

LLOYD v. R. R.

*Brooks, Sapp & Williams for plaintiff.*
*Wilson & Ferguson for defendant.*

WALKER, J., after stating the case: As to the plea of the defendant to the jurisdiction, it may be said that the mere filing of a transcript in the Federal court and docketing the case there did not prevent the State court from proceeding with the cause by trial and final determination in the exercise of its jurisdiction, as the order of removal was held by this Court to be erroneous and was accordingly reversed, with directions to retain the case. The plea, therefore, was properly overruled. Our decision could not be questioned or collaterally attacked in that way, but only by a writ of error to the final judgment. *Herrick v. R. R.,* 158 N. C., 307, and cases cited; *Crehore v. Railway Co.,* 131 U. S., 244 (33 L. Ed., 144). This Court had the right to decide for itself whether the papers presented a removable case (*R. R. v. Dunn,* 122 U. S., 513; *Stone v. South Carolina,* 117 U. S., 432; *Herrick's case, supra*). And having held that they did not, the ruling stands until reversed in some regular and proper way.

Other questions remain for consideration: (1) Refusal of the court to submit certain issues tendered by the defendants, and the adoption of others in their stead. (2) Denial of motion to nonsuit, under the Hinsdale Act, Revisal 1905, sec. 539. (3) Refusal to instruct the jury, as requested by defendants. (4) Error in the instruction given, as specified in the exception thereto.

The issues tendered by the defendant, the Southern Railway Company, were as follows:

1. Did the plaintiff contribute by his negligence to his own injury, as alleged in the answer?

2. How much is the whole amount of damages sustained by the plaintiff by reason of the injuries received by him?

3. What sum should be deducted from the damages sustained by the plaintiff as the proportion or just share thereof attributable to the negligence of the plaintiff?

The court properly refused to submit these issues, as contributory negligence was not a defense or bar to the action under the Federal Employers' Liability Act, but could be considered only on the inquiry as to the damages. No separate issue was necessary for this purpose. The act expressly provides: "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." The entire question of contributory negligence is to be considered by the jury in assessing the damages. Thornton on Employers' Liability Act, p. 101, and secs. 68 and 69. There would be no advantage in a separate issue as to contributory negligence, as an answer to it, one way or another, would not enable us to determine whether the jury had correctly estimated the damages. It is not at all usual to allow a specific issue as to each distinct element of damage, but they are all considered under only one issue. If the court instructs erroneously as to any particular element, it may be reviewed upon proper exception.

There was no error in overruling the motion to nonsuit the plaintiff. The evidence tended to show negligence on the part of the defendant in assigning the plaintiff, as engineer, to operate a defective engine, which he did not know was out of order. Upon a motion of this kind, the evidence is construed most favorably for the plaintiff, and he is entitled to have considered every reasonable inference therefrom. *Brittain v. Westhall,* 135 N. C., 492; *Freeman v. Brown,* 151 N. C., 111. If the evidence is thus treated, and having regard to what the plaintiff himself testified, we find that he said: "The proper way to handle the lever of an ash-pan, and the safe way, is to go to the side of the engine, on the left side; go to the side of the engine with your face the way the engine was fronting, and stoop down and catch hold of the lever and pull it; that would be the natural way, and that would be the proper way. When you pull the lever up in that way, your body would go with it. I can't say that there was no danger in handling these that way to the person operating it; there is danger to them any way you handle

it; there is danger to the person operating it, no matter how you handle it, if you take one improperly adjusted; they are universally known to be dangerous if they are not properly adjusted—anybody can tell you that. If properly adjusted, you can handle them any way you want to and not hurt you." He further testified that the defect was in the mechanism of the lever extending from the shaft to the damper, and was due to the tightening of the nut on the rod, which caused it to form a spring, and that, when he was examining the ash-pan, it flew out and struck him on the forehead, knocking him senseless. The engine had just come from the repair shop, and was presumed to be in good order, though it was his duty, as engineer, to inspect it and ascertain if it was in serviceable condition for its regular run from Spencer, N. C., to Monroe, Va. He was not aware of any defect in the lever or its attachments, and was only "looking between the ash-pan and fire-box to see if the grates were intact." If the engine was defective, it was his duty to report it, so that it could be returned to the shop for repairs. He testified: "A part of my duty on that day would have been to inspect and examine this engine before returning it to the shop. I had to make an inspection before carrying it out, to see that it was in condition to carry out; that was the purpose of the trip—to see if it was in proper condition, and make it so. . . . I knew from reputation beforehand, if the lever was not properly adjusted, that it was dangerous; I had never handled one in my life. I had handled engines of that character with levers, from June until January; I know I had some engines equipped that way; I don't know whether all of them were, because it was not in my line of business to have anything to do with the damper; that came in the fireman's line and hostler's; I never had to clean fire or assist in doing it; it was my duty to inspect the engine—the machinery of it. It was my duty, and I say in my complaint, to ascertain whether or not that engine was in serviceable condition to go out on that trip; that was the very purpose of taking the engine out at all, was to take it out to see whether it was in serviceable condition. Anything that would be wrong or unserviceable, of course, I

would be expected to report, and if I had not gotten hurt with that damper and had investigated it, it would have been my duty to report it to the foreman to be properly adjusted, which I would have done if I had not been hurt."

It is evident from this statement of his, that he did not intend to say that he was to readjust or repair the engine, if found to be out of condition, but merely to inspect and, if any defect was discovered there, to report it.

There was ample evidence of the defective condition of the engine in respect to its damper and the lever that controlled it. The plaintiff was not ordered to repair a known defect in the engine, in which case he would, of course, assume the risk. The case, therefore, does not fall within the rule laid down by us in *Lane v. R. R.,* 154 N. C., 9, where it was the employee's duty to repair a broken door, and in *White v. Power Co.,* 151 N. C., 356, where he was sent to repair a wire that fed a lamp with an electric current which had failed in some way. We there referred to *Spinning Co. v. Achord,* 94 Ga., 14 and 16, in which *Chief Justice Bleckley* gave the homely but apt illustration that the physician might as well insist on having a well patient to be treated and cured by him as the machinist to have sound and safe machinery for him to repair; and he added: "The plaintiff was called to this machinery as infirm, not as whole." But it was not so in this case.

Plaintiff was not assigned to repair any break in this engine. It had just come from the repair shop, and was supposed to be in good order and free from any defect. His duty was to inspect merely and try out the engine—shake it down, so to speak, to see if it was ready and fit for its run that day or the next from Spencer to Monroe. It is true that he was searching for defects, but if he found any, his duty was to report, as he says. We do not think that in this respect he assumed the risk.

It was the duty of this company to exercise ordinary care in providing a reasonably safe place for him to work and reasonably safe tools and appliances with which to perform it. *Marks v. Cotton Mills,* 135 N. C., 287, where we said: "The employer does not *guarantee* the safety of his employees. He is not bound

to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements, and appliances, but only such as are reasonably fit and safe and as are in general use. He meets the requirements of the law if in the selection of machinery and appliances he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. . . . The rule which calls for the care of the prudent man is in such cases the best and safest one for adoption. It is perfectly just to the employee and not unfair to his employer, and is but the outgrowth of the elementary principle that the employee, with certain statutory exceptions, assumes the ordinary risks and perils of the service in which he is engaged, but not the risk of his employer's negligence. When any injury to him results from one of the ordinary risks or perils of the service, it is the misfortune of the employee, and he must bear the loss, it being *damnum absque injuria;* but the employer must take care that ordinary risks and perils of the employment are not increased by reason of any omission on his part to provide for the safety of his employees. To the extent that he fails in this plain duty he must answer in damages to his employee for any injuries the latter may sustain which are proximately caused by his negligence."

Our latest expression on the subject is in *Lynch v. R. R.,* 164 N. C., 249 : "We have said in numerous decisions that the master owes the duty to his servant, which he cannot safely neglect, to furnish him with proper tools and appliances for the performance of his work, and he does not meet fully the requirement of the law in the selection of them, unless he uses the degree of care which a person of ordinary prudence would exercise, having regard for his own safety, if he were supplying them for his own use. *Marks v. Cotton Mills,* 135 N. C., 287; *Avery v. Lumber Co.,* 146 N. C., 595; *Mercer v. R. R.,* 154 N. C., 399. The master should, in the exercise of such care,

provide reasonably safe tools, appliances, and surroundings for his servant while doing the work. *Dorsett v. Manufacturing Co.,* 131 N. C., 254; *Witsell v. R. R.,* 120 N. C., 557; *Orr v. Telephone Co.,* 132 N. C., 691." And to these citations may be added, *Pigford v. R. R.,* 160 N. C., 93; *Mincey v. R. R.,* 161 N. C., 467; *Kiger v. Scales Co.,* 162 N. C., 133.

In the *Mincey case* we said: "The duty of the master to provide reasonably safe tools, machinery, and place to work does not go to the extent of a guarantee of safety to the employee, but does require that reasonable care and precaution be taken to secure safety; and this obligation, which is positive and primary, cannot be avoided by a delegation of it to others for its performance. The master's duty, though, is discharged if he does exercise reasonable care in furnishing suitable and adequate machinery and apparatus to the servant, with a reasonably safe place and structures in and about which to perform the work, and in keeping and maintaining them in such condition as to afford reasonable protection to the servant against injury. *R. R. v. Herbert,* 116 U. S., 642; *Gardner v. R. R.,* 150 U. S., 349; *R. R. v. Baugh,* 149 U. S., 368; *Steamship Co. v. Merchant,* 133 U. S., 375. This undertaking on the part of the master is implied from the contract of hiring (*Hough v. R. R.,* 100 U. S., 213), and if he fails in the duty of precaution and care, he is responsible for an injury caused by a defect which is known to him and is unknown to the servant. *R. R. v. McDade,* 135 U. S., 554."

The Federal Employers' Liability Act has adopted the same rule, as it provides that the employer shall be liable for injury or death of the employee "resulting in whole or in part 'from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Whether the defendant knew of the defective adjustment of this lever with the ash-pan damper, or in the due exercise of care should have known of it, before it left the repair shop,

which, in law, is the same thing, was a question for the jury upon the evidence, and it was so submitted by the court.

There was sufficient evidence of negligence in causing or permitting the defect to exist. If the least degree of care had been used in the shop, it could have been removed and the consequent injury prevented. The presiding judge, in his charge, required a finding of such negligence by the jury before giving an affirmative answer to the first issue. He instructed the jury, on this point, as follows: "This is not a case in which you can infer negligence from the simple fact that the plaintiff was injured, as contended by him; but the burden is upon the plaintiff to show by the greater weight of the evidence that the defendant company was negligent, as alleged. The negligence alleged is that the machinery used upon Engine 579 for controlling the ash-pan damper was defective, in that it was adjusted so tightly that it made it unsafe to operate the lever in raising and lowering said ash-pan upon this occasion." He also properly left the acts and conduct of the plaintiff in handling the lever, if he did so, to be considered by the jury on the issue as to damages, his negligence, if any, being contributory, and his charge, in this respect, was a compliance with the act of Congress, which provides: "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee."

Before leaving the question of negligence, we should remark that defendant has assigned error in the charge and refusals to charge, it being its fifth, sixth, and tenth assignments, but nowhere in the brief are they discussed, as is required by the rule of this Court, 164 N. C., 551, Rule 34: "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." The fifth, sixth, and tenth assignments are not considered or discussed separately in the brief, as they should be, if relied on, but only as parts of a group of assignments, viz.: "The second, third, fifth, sixth, and tenth assignments of error present practically the same question to the

Court, Whether, under the facts in this case . . . he can recover for an injury caused by the fact that the engine was not properly adjusted in the shops." The assignments, as thus presented, are faulty, in that it is assumed, as will appear from them when read in full, that plaintiff's duty was not only to "inspect," but to repair or "adjust" the engine, if defective; whereas he testified that his duty was to "inspect" and "report." But the assignments, as stated, embracing five of them, relate only to the right to recover *at all,* and this question has been fully considered under the assignment to the refusal of a nonsuit. Under the rule, they cannot be otherwise considered here.

The seventh assignment, to the refusal of the court to give an instruction, cannot be sustained, as the facts recited therein would not, if found by the jury, defeat plaintiff's recovery, but are properly referable to the question of damages.

The eighth and ninth assignments raise the question whether plaintiff, at the time of the injury, was engaged in interstate commerce. He was put in charge of this engine, and his duty, as engineer, required him to inspect it for the purpose of ascertaining whether it was in proper condition for its run from Spencer, N. C., to Monroe, Va. It was in commission for the purpose of moving interstate traffic between those two points. It was not necessary to constitute it an instrument of interstate commerce that it should have started on its journey. This engine was to be employed wholly in interstate commerce, and has been so used since the day of the injury. The work of reparation had been finished in the shops and the engine was run out on the track, preparatory to her next interstate journey. She had been thus used before, and her runs were merely suspended temporarily for the purpose of repairing her, after which the interstate runs would be resumed. Plaintiff was overlooking his engine, expecting to take it out that day or the next, to Monroe, Va. His work was done only in a preparatory stage of interstate commerce, but was none the less a part of it. The case, in this respect, is governed by *N. C. R. R. v. Zachary,* 232 U. S., 248, where the Court says:

"It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not as yet been attached to his⁻engine, his employment in interstate commerce was still *in futuro.* It seems to us, however, that his acts in inspecting, oiling, firing and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant," citing *Pedersen v. D. L. and W. R. Co.,* 229 U. S., 146; *St. L. S. F. and T. R. Co. v. Seale,* 229 U. S., 156.

In this connection, the testimony of the defendant's witness, H. J. Heilig, becomes pertinent: "Engine 579 is now running between Spencer, N. C., and Monroe, Va.; has been since the injury in regular service; may have been off for a few days at the time for local repairs; it was running between those points before the injury; one of the train engines operating between Spencer and Monroe; it was hauling commerce between the two States, between Spencer, N. C., and Monroe, Va."

The trip to Salisbury or to Barber's Junction was for the purpose of testing the sufficiency of the engine to make the run, and was but a part of the work of inspection and preparation.

*Illinois Central R. Co. v. Behrends,* 233 U. S. (34 Sup. Ct. Rep., 646), was a case where the carrier and the employee were both, at the time of the injury, engaged in intrastate commerce, and although the engine in question was soon to be coupled to interstate cars, it was then hauling intrastate freight, and the Employers' Liability Act was held not to apply.

For the reasons stated, we hold that the defendant Southern Railway Company, at the time of the injury, was engaged in interstate commerce, and plaintiff was employed by it in such commerce, so as to make the Federal Employers' Liability Act applicable to the case. The same reasoning applies to the North Carolina Railroad Company, lessor of its codefendant, as it authorized and is responsible for the latter's acts under its lease, and is, therefore, engaged in commerce between the States, being itself a common carrier. The case of *N. C. R. R. Co. v.*

*Zachary, supra,* also disposes of this point, for it was there held that the North Carolina Railroad Company was liable under said act as an interstate carrier, under facts and circumstances similar to those shown in the record.

The defendant did not plead assumption of risk, nor was any issue relating thereto tendered by it, or submitted by the court. This is necessary, under our practice and procedure, in order to raise that question, as we regard it as a distinct defense, which must be pleaded and an issue thereon tendered by the defendant or submitted by the court of its own motion. *Dorsett v. Manufacturing Co.,* 131 N. C., 254; *Eplee v. R. R.,* 155 N. C., 293; *Bolding v. R. R.,* 123 N. C., 614; *West v. Tanning Co.,* 154 N. C., 44.

It may be well to refer to one other matter. The petition to remove the case to the Federal court, because of the diversity of citizenship, as between the plaintiff and the defendant Southern Railway, and the alleged fraudulent joinder of the North Carolina Railroad Company, a domestic corporation, was rightly denied, as a general allegation of fraud is not sufficient. There are no facts alleged which, if found to exist, would constitute a case of fraudulent joinder. The petition, on its face, must be sufficient in this respect to raise the issue; and if it is, then the issue would be tried in the Federal court. But the State court must first pass upon the sufficiency of the petition and decide for itself if it states a case for removal, before it is required to surrender its jurisdiction. *Lloyd v. R. R.,* 162 N. C., 485, and authorities cited; *Herrick v. R. R.,* 158 N. C., 307; *Hough v. R. R.,* 144 N. C., 692; *Rea v. Mirror Co.,* 158 N. C., 24.

If we hold that the North Carolina Railroad Company is liable as a joint tort feasor, by reason of the use of its main tracks, with the siding, in interstate traffic, there could be no fraudulent joinder, as a plaintiff is entitled to join all who are liable to him for a joint tort, or to select among them whom he will sue. *Hough v. R. R., supra.* It was said in that case: "The plaintiff, or party aggrieved by the wrong, may make it joint or several, at his election, and it is not

open to the wrongdoer to complain of the election so made or to dictate how he shall make his choice. If the injured party chooses to sue the wrongdoer jointly, he thereby declares that the tort shall be joint, and the law so regards it, without listening to or even hearing from the wrongdoer. And so it is when he sues them separately. His election finally determines what shall be the character of the tort, whether joint or several. This principle has controlled the courts in deciding upon applications for the removal of causes from the State to the Federal courts whenever it becomes necessary to inquire whether a separable controversy is presented as between the plaintiff and the non-resident defendant, or opposite party, of diverse citizenship." A strong authority is *Torrence v. Shedd,* 144 U. S., 527, in which *Justice Gray* thus tersely stated the rule: "A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleading." The domestic corporation cannot lease its railway and permit its physical connection at both ends with other tracks laid by its lessee, for the more convenient and practical use of the latter's main line acquired from the lessor, without being responsible for torts committed in the use of such lateral or side tracks. The construction of such tracks was manifestly contemplated by the parties to the lease, and what is authorized, expressly or by necessary implication, makes him who gave the authority responsible for any illegal exercise of it. *Qui facit per alium, facit per se.*

We have discussed some of the questions not strictly before us on this appeal, because it was said, in the former opinion by this Court, that they were not *finally* settled, and as the facts have since been more fully developed, our opinion upon them should be more definitely and conclusively stated. The intimation in its former opinion is now the final decision of the Court.

There was no error in the several rulings of the court at the last trial.

No error.