CINCINNATI, N. O. & T. P. RY. Co. *v.* W. E. MORGAN.*

(*Knoxville.* September Term, 1917.)

1. **COMMERCE.** Railroads engaged in "interstate commerce."

To be within the federal Employers' Liability Act (Act Cong. April 22, 1908, chapter 149, 35 Stat. 65 [U. S. Comp. St. 1916, sections 8657-8665]), one need not be directly engaged in an interstate train movement; the test being whether his task was so directly and immediately connected therewith, as to form a part or necessary incident, even though only preliminary, thereto. (*Post, pp.* 31-32.)

Acts cited and construed: Acts 1908, ch. 149.

Cases cited and approved: New York Cent., etc., R. Co. v. Carr, 238 U. S., 260; Norfolk & Western R. Co. v. Earnest, 229 U. S., 114.

2. **COMMERCE. Railroads. Use of engine in "interstate commerce."**

Where a locomotive was habitually and exclusively used in interstate train movements, and not designated for any intrastate or mixed use, an employee working upon it was engaged in interstate commerce. (*Post, pp.* 32-33.)

Cases cited and approved: Baltimore, etc., R. Co. v. Darr, 204 Fed., 751; Law v. Ill. Cent. R. Co., 208 Fed., 869; Lloyd v. Southern R. Co., 116 N. C., 24; Smiegil v. Great Northern R. Co., 165 Wis., 57.

Case cited and distinguished: Minneapolis & St. L. R. Co. v. Winters, 242 U. S., 353.

3. **COMMERCE. Railroads. Federal Employers' Liability Act. "Interstate commerce."**

Where an engine had been specifically designated for a certain interstate train, and a hostler was told to fire and prepare the engine for such train, and while doing so was injured, he was engaged in interstate commerce within the federal Employers' Liability Act. (*Post, pp.* 33-35.)

---

*As to constitutionality, application and effect of Federal Employers' Liability Act see notes in 47 L. R. A. (N. S.), 38; L. R. A. 1915C, 48.

Cases cited and approved: Southern R. Co. v. Puckett, 244 U. S., 571; Byram v. Ill. Cent. R. Co., 172 Iowa, 631; Staley v. Ill. Cent. R. Co., 268 Ill., 356; Lloyd v. N. C. R. Co., 116 N. C., 24; Hinson v. Atlanta, etc., R. Co., 172 N. C., 646.

Case cited and distinguished: N. C. R. Co. v. Zachary, 232 U. S., 248.

4. **MASTER AND SERVANT.** Negligence. Question for jury.

Where an engine hostler was struck and injured by the dropping of a hood on a smokestack by an inspector of equipment, the question of negligence of the company was one of fact for the jury, on the inference that the inspector or his helpers, if exercising due care, would have seen the hostler and avoided the injury. (*Post, pp.* 35-36.

5. **MASTER AND SERVANT.** Contributory negligence not precluding recovery.

Where a servant was guilty of contributory negligence, his recovery is not precluded by the federal Employers' Liability Act. (*Post, p.* 36.)

---

FROM MORGAN

---

Appeal from the Circuiut Court of Morgan County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— XEN HICKS, Judge.

HORACE M. CARR, for appellants.

CASSELL & HARRIS, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This suit was brought by Morgan to recover damages for personal injuries; the action being founded

on the federal Employers' Liability Act.  He was granted a judgment based on the verdict of a jury in the circuit court, after a motion of the defendant railway company for peremptory instructions had been overruled.  On appeal the court of civil appeals, reversing the judgment, sustained the motion for instructed verdict, and dismissed the suit.

A petition for *certiorari* was filed by Morgan under which we ordered and have heard oral argument.

An underlying question is whether Morgan was employed at the time he was injured in work which brings his case within the act of Congress upon which it is based.

He was a hostler in the yards of the railway company at Oakdale, Tenn., which is a division terminal. He was engaged at night work, firing engine No. 813, which by bulletin announcement or by a call (known to Morgan) had been designated to pull an interstate passenger train from Oakdale to Danville, Ky. Engines of its class—the 800 class—were to all intents and purposes used exclusively and habitually in runs north from Oakdale to Danville.  Narrow bridges to the south prevented the use of that class in journeys to Chattanooga, Tenn., the next division point in that direction.  Engine No. 813 had come in from Danville pulling train No. 15, and after lying at Oakdale for thirteen and one-half hours was to pull return train No. 16 to Danville.  In the meantime the accident to Morgan happened.

It appears that in firing the engine a blowpipe was used, and that it was inserted by Morgan in the smokestack and left for some time. When the hostler returned and was removing the blower, it struck against the stack, and one of its sections became detached and fell back into the boiler. Morgan then went to get Jones, the boilermaker of defendant, to supervise opening a door in the head of the boiler in order to admit of a helper going in and recovering this detached section of pipe.

It appears that the inspector of equipment who was engaged in inspecting a nearby engine saw Morgan leave engine No. 813, and the inspector proceeded to the latter locomotive to test its air appliances and other mechanical equipment, as was his duty after it had been fired up. There is some evidence to the effect that an assistant was on the cab of engine 813 with the inspector—on the left side. While the inspectors were on the cab of the engine, Morgan, Jones, and a helper returned, and after the boilerhead had been opened Morgan ascended the pilot and was standing in front of the smokestack, where, leaning over, he reached down to receive the section of the blower pipe as it would be handed up to him by the helper who had crawled within. In this position Morgan was struck by a heavy oval metal hood which was attached to the smokestack for use as a fender to protect the enginemen from gusts of smoke and cinders as the locomotive ran through tunnels on defendant's line of railway. This hood was suddenly

moved in his test of its working condition by the inspector from his place in the cab. The inspector did not know of the presence of Morgan on the boiler when he turned the valve that operated the hood. He could only have seen Morgan by putting his own head out of the cab window. He was on the right side; but his helper was on the opposite side, and Morgan stood toward the left side of the smokestack.

On the fundamental question we are of opinion that Morgan was, at the time he was injured, engaged at a task that falls within the scope of the federal Employers' Liability Act. All that he did looked to the firing of the engine and turning it over in proper condition to be attached to and as a part of an interstate train.

Each case based on the act must be decided in the light of its own facts, and necessarily there arise many border-line cases. The test by which to determine whether, at the time of a given injury, the employee was engaged in an interstate commerce transaction is: Was his act one which was so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof? *New York Cent., etc., R. Co.* v. *Carr,* 238 U. S., 260, 35 Sup. Ct., 780, 59 L. Ed., 1298.

In order to bring the employee within the protection of the act, it is not necessary that he be directly engaged in an interstate train movement, since his task may be but an incident, preliminary but necessary, to that movement. In *Norfolk & Western R. Co.* v.

*Earnest,* 229 U. S., 114, 33 Sup. Ct., 654, 57 L. Ed., 1096, Ann. Cas., 1914C, 172, the employee whose action was sustained was injured while piloting a locomotive through the yard, by walking ahead of it, to the main track, where it was to be attached to an interstate train.

The railway company mainly relies upon the recent case of *Minneapolis & St. L. R. Co.,* v. *Winters,* 242 U. S., 353, 37 Sup. Ct., 170, 61 L. Ed., 358, where it was held that a machinist's helper engaged in the making of repairs in a roundhouse upon an engine which had been used in hauling trains which had carried both intrastate and interstate freight, and which was used in like service after the accident, was not then employed in interstate commerce within the meaning of the act. It was said:

"An engine, as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

We understand this to mean that an engine may be designated or "destined" for interstate business, so as to bring one engaged at work on it within the protection of the act, even before it begins to move on an interstate journey. We are of opinion that such designation is to be found in this case in either of two aspects:

(a) The locomotive was habitually and exclusively used in interstate train movements, and such use involves an initial designation which continues to impress upon the engine the character of an instrumentality of interstate commerce until by some affirmative act of the railway company it is diverted into an intrastate or mixed channel. *Baltimore, etc., R. Co. v. Darr,* 204 Fed., 715, 124 C. C. A., 565, 47 L. R. A. (N. S.), 4; *Law v. Ill. Cent. R. Co.,* 208 Fed., 869, 126 C. C. A., 27, L. R. A., 1915C, 17; *Lloyd* v. *Southern R. Co.,* 166 N. C., 24, 81 S. E., 1003; *Smiegil* v. *Great Northern R. Co.,* 165 Wis., 57, 160 N. W., 1057; Richey on Federal Emp. Liability (2 Ed.), section 40.

(b) It appears, further, that there was a specific designation of the engine in question for an interstate journey before Morgan began to fire it. Would the benefits of the act be denied to the regular fireman who followed Morgan by a few minutes and who, let us assume, was injured while engaged in opening the furnace door to replenish the fire before the engine was moved; or again, to the engineer while in the act of pulling the throttle? We can see no substance in

139 Tenn.—3

any attempted distinction. If one of three be so engaged in interstate commerce, so are the other two.

Certain it is that under the ruling of the supreme court of the United States, a distinction cannot be founded on the fact that a hostler is one engaged in taking preparatory steps, or doing work that is preliminary to an interstate train trip. In *North Carolina R. Co.* v. *Zachary,* 232 U. S., 248, 34 Sup. Ct., 305, 58 L. Ed., 591, Ann. Cas., 1914C, 159, it was recognized that work in preparing instrumentalities of interstate commerce for immediate use therein is so intimately related to such commerce as to become a part of it. It was said:

"It is argued that because, so far as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not as yet been attached to his engine, his employment in interstate commerce was still *in futuro.* It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not yet been coupled up is legally insignificant."

See, also, *Southern R. Co.* v. *Puckett,* 244 U. S., 571, 37 S. Ct., 703, 61 L. Ed., 1321, and cases cited; *Byram* v. *Ill. Cent. R. Co.,* 172 Iowa, 631, 154 N. W., 1006; *Staley* v. *Ill. Cent. R. Co.,* 268 Ill., 356, 109 N. E., 342, L. R. A., 1916A, 450; *Lloyd* v. *North Carolina R. Co.,* supra; *Hinson* v. *Atlanta, etc., R. Co.,* 172 N. C., 646, 90 S. E., 772.

The character of the engine, therefore, did not depend on any probability or upon any accidental later event. The test event of designation preceded Morgan's going upon it, and we think firmly fixed its *status* as an instrumentality of interstate commerce, so far as his rights are concerned. How else could Morgan have viewed it after having been directed to fire the locomotive for a trip to Danville, Ky.? The chance that there would be a countermand of the order of designation was itself, if a probability, then, one too remote for consideration, as a practical question; and until in fact given Morgan's *status* for recovery, it seems, would not be changed. At the moment of the injury that *status* was one controlled by the act.

The court of civil appeals erred, therefore, in holding that Morgan was not engaged in a work of interstate commerce when injured.

For the railway company it is contended that no negligence on its part is shown, since the inspector or inspectors had a right to assume that Morgan had passed to another engine, and would not again be at engine No. 813.

We shall not go into a detailed discussion of this question of fact, or further than to say that the jury might have inferred that if Morgan, standing at a place on the boiler about the front of the smokestack, was not visible to the chief inspector at the time the hood was pulled down, yet that one of the three men,

Jones, his assistant, or Morgan, might have been seen about the engine at work by the inspector or his assistant had they been in the exercise of due care. The inspector in his testimony admits that it was his duty to look out to see whether his work could be done in safety to others. The presence of others at the front of the engine if discovered might have caused more caution on the part of the inspector and his assistant, and prevented the happening of the accident.

Morgan was guilty of contributory negligence, but under the terms of the act that does not bar a recovery.

We are of opinion, therefore, that the court of civil appeals committed further error in ruling that no negligence on the part of the railway company was shown.

Reverse the judgment of that court, and affirm the judgment of the circuit court. Costs incident to appeal are awarded appellee Morgan.