## SCOTT & COMPANY *v.* MCDONALD.

1. A juror who had been empanelled and sworn in a case, and being unable to agree with his fellow-jurors a mistrial resulted, was an incompetent juror when the case was again called for trial in the same court.

2. After the seller of a fertilizer has complied with the prerequisites of law, the buyer purchases with knowledge that the State has licensed

it to be sold. He can show that it is worthless only by proving, in case of total failure of consideration, that it did not contain the ingredients guaranteed in the analysis, or in case of partial failure of consideration, that it did not contain as much of the ingredients as the law requires. To show only that it had no effect on his crop, is not sufficient; but by this fact and by other proof he must show that it did not contain the ingredients of the guaranteed analysis.
May 15, 1889.

·    *Certiorari*. Jury and jurors. Practice. Pleadings. Consideration. Fertilizers. Before Judge BOYNTON. Rockdale superior court. August adjourned term, 1888.

George W. Scott & Co. sued McDonald in a magistrate's court, on an account dated November, 1884, for ten sacks of gossypium guano, $36, with interest. Defendant pleaded non-assumpsit, and also that the consideration of the account had failed, because the guano was entirely worthless and of no benefit whatever.

The cause was tried before a jury on an appeal. M. D. Irwin, G. A. Lucas, J. I. Rosser and six other persons were drawn on the jury. Defendant's counsel objected to Lucas, Rosser and Irwin and asked that they be stricken for the following causes: that Lucas be stricken because he was on a jury that tried this case, said jury failing to agree and causing a mistrial; that Irwin be stricken because he held an office in the agricultural department of the State of Georgia, and therefore was directly connected with the inspection of fertilizers in the State; and that Rosser be stricken because he was an important witness for plaintiffs and had been supœnæd by them to testify. The motion to strike any of these jurors was overruled. The parties proceeded to strike, and Rosser with four others, Irwin and Lucas not being of the number, were empanelled as the jury.
: The testimony for plaintiffs tended to show that the guano was sold to defendant for $36; that the sacks containing it were branded and tagged as the law directs when they were put in the warehouse at Conyers;

that defendant got them out of the warehouse; and that the account was due and unpaid. Rosser was sworn as a witness for the plaintiffs, and testified that he used some of the same lot of guano on his wheat the same year that defendant used it on his; that he also used about fifty bushels of cotton-seed per acre on the same wheat adjoining the place where he used the guano; that he had only about two thirds of a stand on the land where he put the cotton-seed, but had a good stand where he used the guano; that the guano he used benefited his crop; that he made more per acre where he used the guano than he did where he used the cotton-seed; and that all the wheat was very poor that year.

The defendant testified that he put the guano on his wheat, about 160 to 175 pounds per acre; that he left three strips of land from twenty to thirty feet wide across and in different parts of the field, and in order to test the guano put none on these strips, and during neither the growing nor the harvesting could he discover any difference in the quality or quantity of the wheat where there was guano and where there was none; that the land where he put the guano was suitable for wheat, and so were the seasons that year; and that he made very fair wheat on the adjoining field the same year. Several witnesses, who had examined the growing wheat of defendant, testified corroborating him. One of them swore that he bought some of the same guano the same season and found clods of dirt or clay as large as his two fists in the sacks; and that the guano did his crops no good, and he considered it worthless. Another testified that he and others used some of the same lot of guano the same year, and that it benefited their crops. Several of them swore that it was a very bad wheat year; and one of them testified that defendant's wheat was diseased.

The jury found for the plaintiffs. The defendant

took the case by *certiorari* to the superior court, alleging that the verdict was contrary to law and evidence, and that the court erred (1) in not striking from the panel of jurors the names of Lucas, Irwin and Rosser for the causes set forth; (2) in submitting the law and facts to the jury without charging them; (3) in allowing counsel for plaintiffs to read §§1553 (a), (b) of the code to the jury and argue to them that defendant had no right, under the law, to file a plea of failure of consideration to an open account for guano, and in allowing counsel for plaintiff to insist that that was the law of the case; thereby misleading the jury.

The *certiorari* was sustained and a new trial granted on the ground that Lucas was an incompetent juror. The judgment of the court also contained the following:

"While I do not decide that Rosser was an incompetent juror, the record shows that he had a fixed opinion on the question of failure of consideration and was not in a strict sense an impartial juror. It appears that it is a mooted question in the case whether defendant has a legal right to plead failure of consideration and have that question submitted and passed on by the jury under the evidence. I therefore instruct the magistrate to hold that defendant has the right to plead failure of consideration, and submit that question to the jury for their finding under the evidence. This case was before this court on *certiorari* once before, and a new trial was ordered on the ground that the magistrate charged the jury that defendant had no right to plead failure of consideration, if it appeared that the guano had been branded and tagged as required by law, unless it was shown that the guano did not contain the ingredients specified in the brand."

To this judgment plaintiff excepted because of error (1) in sustaining the *certiorari*; (2) in holding Lucas an incompetent juror; (3) in holding or intimating that Rosser was not a competent juror; (4) in the direction given to the magistrate; (5) in embodying in the judgment the grounds upon which a former new trial was granted.

J. N. Glenn and J. R. Irwin, by brief, for plaintiffs.
No appearance for defendant.

SIMMONS, Justice.

1. The facts of this case will be found in the official report. ' The court below was correct in holding that a juror who had been empanelled and sworn to try the case, and who was unable to agree with his fellow jurors, a mistrial resulting therefrom, was an incompetent juror to try the case when it was again called for trial in the same court. *Mayor, etc.* v. *Goetchius,* 7 *Ga.* 139; *Hawkins* v. *Andrews,* 39 *Ga.* 118.

2. We think the court was right in holding generally that a plea of total failure of consideration could be filed in a case like this, but we think he erred in directing that the plea in this record should be submitted to the jury with the evidence adduced in this case. We do not think the plea filed in the justice's court in this case is such a plea of failure of consideration as is contemplated by the statute in this class of cases. In our opinion, the only plea of total or partial failure of consideration in such a case as this is, the plea that the fertilizer purchased did not contain the ingredients as required by the statute. Code, §§1553 (a), (b). Before any person can legally sell fertilizers in this State, the fertilizer must be inspected by an officer of the State. It must be branded and tagged, and the brand must contain an analysis of the fertilizing properties contained therein, and the law requires that the manufacturer shall guarantee said analysis. When all this is done, the State authorizes the person to sell the fertilizer. It says, if the fertilizer contains these ingredients up to the measure of the guaranteed analysis, it is sufficient. A person who buys a fertilizer after these requirements have been complied with, does so with the knowledge that the law declares it to be a good fertilizer. The law does not require the seller to guaranty its effects upon crops. It only requires him to war-

rant that it contains such a per cent. of certain ingredients. The purchaser must determine for himself whether those ingredients will benefit his crops. He purchases it with the knowledge that the State's officer has inspected it and placed his tag upon it. He purchases it with the knowledge that the manufacturer's brand is upon it containing the analysis required by law. He purchases it with the knowledge that the State has licensed it to be sold. After so purchasing, in our opinion, he can only show that the fertilizer is worthless by proving, in case of total failure of consideration, that it did not contain the ingredients guaranteed in the analysis, or in case of partial failure of consideration, that it did not contain as much of the ingredients as the law requires. In order to make out such a plea, it is necessary for him to go further than to show that it had no effect on his crops. He must show by this and by other proof that it did not contain the ingredients of the guaranteed analysis. If he only shows that it did not have any effect on his crop, that is not sufficient, under the ruling of this court in the case of *Hamlin* v. *Rogers, Worsham & Co.*, 78 *Ga.* 631. We have read the evidence sent up in this record, and find that the whole evidence of the defendant in the court below was as to the effect the fertilizer had upon his crop. If the case were sent back to be tried over, this evidence would not be sufficient, under our view of the law, to authorize the jury to find a verdict in his favor. Therefore, under the view we take of the law of this case, it was unnecessary to send the case back to have a new trial, although the court erred in not sustaining the motion to strike the juror for cause. Under this evidence and our view of the law, any impartial jury would be compelled to find in favor of the plaintiff; and as litigation must have an end at some time,

we, reverse the judgment of the court below granting a new trial, and direct that the verdict of the jury in the justice's court be allowed to stand.

*Judgment reversed.*