Jones *et al.* v. The Cordele Guano Company.

1. The act of 27th December, 1890, touching the preservation and analysis of samples of fertilizers, is cumulative only and not exclusive. Unless parties to the sale elect to co-operate in depositing a sample with the ordinary, the provisions of the act have no application to the given transaction.

2. Under the provisions of the code, §1553(b), an analysis of a fertilizer by the State chemist must be an " official analysis " to render a copy of it, under seal of the department of agriculture, admissible in evidence. There can be no official analysis made at the instance of a purchaser for use in litigation, except by procurement of the ordinary and compliance with the other provisions of the act of 27th December, 1890.

3. Any analysis of a fertilizer by the State chemist which is of record in the department of agriculture is, *prima facie*, an official analysis, and a copy of the same under the seal of that department is admissible in evidence under section 1553(b) of the code, if relevant to the matter in issue. Unless it otherwise appears, any sample of fertilizers analyzed by the State chemist is presumed to be furnished to him officially by an inspector of fertilizers.

4. The evidence of the State chemist taken by interrogatories was admissible in evidence to prove the chemical ingredients of the sample analyzed by him, which sample had been taken by the purchaser from the fertilizer in controversy and preserved. After the reception of this evidence, the effect, or want of effect, of the fertilizer on crops, would be admissible as tending to corroborate the analysis, or on the other hand to discredit it.

April 16, 1894. Argued at the last term.

Complaint on note. Before Judge FISH. Lee superior court. March term, 1893.

The guano company sued Jones and Gill upon a promissory note for $1,000, dated March 9, 1891, due October 15, 1891, given for four hundred sacks of " Pride of Dooly " guano. The note stated that the guaranteed analysis was on each sack as required by law, and that the guano was purchased on the judgment of the makers, waiving all guarantee as to its effects on crops. Defendants pleaded the general issue; failure of consideration, in that the guano was worthless and not reasonably suited for the use for which it was bought, and was of no benefit to the crops whereon it was used; and that the guano was represented to contain (and the sacks were so branded) ingredients named in certain proportions stated, but the goods did not come up to the brand nor contain the ingredients as therein set forth, but on the contrary there was little or no nitrogen, ammonia or potash, essential to the production of the crops. Jones also pleaded recoupment, because of damages he alleged he sustained by reason of the failure of the fertilizer to come up to the standard indicated, and because of the utter worthlessness of the same.

On the trial plaintiff introduced the note, and closed. Gill testified that the note was given for a lot of guano bought of plaintiff, witness taking part and Jones the remainder; that it was all the same lot and kind of stuff, all marked " anti-trust," but was the same lot for which the note was given; that defendants never did

get but the one lot from plaintiff; that of the guano
which witness got he, when he used it in March or
April, took a bottle full out of one of the sacks and
kept it carefully locked up in his bureau; that no rep-
resentative of plaintiff was present when he did so;
that in July of that year he carried the bottle of guano
to Atlanta and delivered it for analysis to the State
commissioner of agriculture, who called the State chem-
ist and ordered him to have it analyzed, and he took it
off to analyze it; that there was no label on the bottle;
that witness saw it handed to the chemist for analysis,
and knows it was the same bottle and contained a fair
sample of the guano for which the note sued on was
given.  Plaintiff moved to rule out the evidence of this
witness in reference to the sample and his having it
analyzed, on the ground that the act of December 27,
1890, had not been complied with, and that no evidence
of this character was admissible which was not procured
and preserved in the manner pointed out by the statute.
The motion was sustained.

Defendants offered the certificate or document ad-
dressed to Gill, dated July 16, 1892, showing the analy-
sis of said sample made for Gill by Payne, chemist of
the department of agriculture, certified to be a true and
correct copy from the records, and signed "R. T. Nesbitt,
commissioner of agriculture, per W. H. Joyner, clerk."
Plaintiff objected on the grounds, that the act of 1890
had not been complied with, and that the certificate
had not been proved.  This objection was sustained.
Defendants offered another certificate of the same date,
certified and signed in the same way, addressed to the
Cordele Guano Company, showing the analysis guaran-
teed and actual of plaintiff's fertilizers made by Payne,
chemist, as aforesaid, during the season of 1890–91.
Plaintiff objected, and the certificate was excluded be-
cause it had not been proved, and because it was not

admissible to show what analysis the plaintiff had guaranteed, and because no proof was offered to show how, when or from whom the State chemist procured the sample to be analyzed, or that it was any part of the lot of guano sold defendants, or even that it was manufactured at the same time. In this connection defendants offered the depositions of Payne, as follows: He is State chemist, and his business is to analyze fertilizers. During the season of 1890–91 he analyzed a sample of what was published by the commissioner of agriculture as " Pride of Dooly guano." This analysis was identical with the " anti-trust guano " made by the same company. He made an analysis of the sample sent to him by the commissioner of agriculture as from W. C. Gill for special analysis. Does not know the brand. He then gave the analysis. The sample analyzed did not have ammonia sufficient to entitle it to be published in the list of complete fertilizers. Plaintiff objected to these depositions, on the ground that the act of December 27, 1890, had not been complied with. The objection was sustained.

Defendants offered the depositions of W. W. Dews as follows: He was inspector of fertilizers for Georgia, and since February 25, 1891, inspected plaintiff's goods at different times and places. About April, 1891, he called at plaintiff's factory to inspect; was notified by Scott, who was in charge, that they were through manufacturing and had nothing on hand to inspect. Witness said, he saw brands of the goods in the factory and wanted to inspect. Scott replied, the goods were only odds and ends, and he was selling them at thirteen instead of twenty-three dollars per ton ; and witness told him he ought not to put cheap goods in sacks showing high grade of analysis. Some of the guano inspected by witness guaranteed two to three per cent of ammonia and a certain amount of potash, and upon analysis there

v 94-2

was one and three fourths per cent of ammonia and a less percentage of potash. Plaintiff objected to these depositions, on the ground of irrelevancy, and on the further ground that the transaction at the factory was in April after the sale of the guano in question had taken place, and that it was not an inspection of this particular guano. The objection was sustained. Defendants offered testimony of L. R. Jones, that he was present when the guano was purchased by defendants, and plaintiff warranted that it contained eight hundred pounds of cotton-seed meal to the ton. Plaintiff objected on the ground that the testimony was irrelevant, and that it sought to change a written contract. The court sustained the objection.

Defendants then offered depositions of Mrs. Deas as follows : In 1891 she used three tons of guano bought from Jones, known as " anti-trust," and marked on the sacks as a product of plaintiff's factory. In her estimate it was worthless and did her crops no good that she could see, although the cultivation was good and the seasons fairly good. On the same quality of land and with the same seasons and cultivation she could see no difference in the yield where she used and where she did not use said guano. Plaintiff objected, because the testimony was irrelevant, and because the note expressly waived the effects on crops. The objection was sustained. Defendants then proposed to testify that each used some of the guano on their crops, the land being well prepared and cultivated and the guano carefully put out and the seasons fairly good, and that the guano had no effect upon their crops, there being no difference between the yield where the guano was used and that of adjacent lands of the same quality, cultivation and seasons where none was used ; and that the guano did them no good and was absolutely worthless. Plaintiff objected on the same grounds as last before stated.

The objection was sustained.   Verdict and judgment for the amount of the note were rendered for plaintiff, and defendants excepted.

Fort & Watson and Wooten & Wooten, for plaintiffs in error.   Clarke & Hooper, *contra*.

Lumpkin, Justice.

1. The act of December 27, 1890 (Acts of 1890–91, vol. 1, p. 142), providing that it shall be lawful for any purchaser of fertilizers to require the person selling to furnish a sample of the same for deposit with the ordinary, and also providing for the preservation and transmission of such sample by the latter to the State chemist, the analysis of the same by this officer and the sending by him of a copy of the result back to the ordinary, is cumulative only and not exclusive.   This act contains nothing to prevent a purchaser of fertilizers from taking, on his own account, a sample of the same, having it analyzed by whomsoever he pleases, and introducing evidence, for whatever it may be worth, when the same is relevant, as to the result of this analysis.   Of course, in order to make the statement of the State chemist transmitted to the ordinary conclusive evidence, the provisions of the act in question must be complied with. Where this is not done the act has no application at all.

2. Section 1553(b) of the code declares that: "A copy of the official analysis of any fertilizer or chemical, under seal of the department of agriculture, shall be admissible as evidence in any of the courts of this State, on the trial of any issue involving the merits of said fertilizer."   As it requires express legislation to render any copy of an analysis of a fertilizer admissible as original evidence, necessarily the terms of the law must be fully and exactly complied with in order to obtain the benefit of its provisions.   Therefore, the analysis must be an official one, or a copy of it taken from the records

of the department of agriculture cannot be introduced. As we understand our system for the inspection and analysis of commercial fertilizers, samples are taken by the inspectors and submitted for analysis to the State chemist, who makes reports to the commissioner of agriculture, which reports are recorded in the office of the latter. Analyses thus made are official. We know of no law making official an analysis by the State chemist at the instance or request of a purchaser of fertilizers. Indeed, as we understand it, the State chemist is under no obligation to make an analysis for any private person at all. If he does so, it is simply a matter of courtesy; and although he may report an analysis thus made to the department of agriculture, and it may be entered upon the records of that department, this will not give to that analysis an official character, by virtue of which a copy of it will be rendered admissible as evidence in the courts.

3. Strictly speaking, the commissioner of agriculture should not have recorded in his department any analysis made by the State chemist, except such as the law requires the latter to make and report to that department. It follows that any analysis which is of record in the agricultural department is *prima facie* official, because, presumably, any analysis of fertilizers made by the State chemist and reported by him to the commissioner of agriculture is of a sample, or samples, furnished the chemist officially by an inspector of fertilizers. Therefore, unless it appears that an analysis of fertilizers made by the State chemist was of a sample received from some other source, a copy of an analysis made by him and certified under the seal of the department of agriculture is admissible in evidence under the section of the code above cited.

4. As intimated in the first division of this opinion, where a private person takes and preserves a sample of

fertilizers purchased by him, and procures an analysis thereof to be made by the State chemist, that officer is a competent witness to prove the chemical ingredients of the sample analyzed by him, and his evidence should, in a proper case, be allowed to go to the jury, who are to judge of its value. This would be true as to similar evidence by any other competent chemist. After the reception of this expert evidence, it would be admissible for either party to show the effect, or want of effect, of the particular fertilizer on crops, either for the purpose of corroborating the analysis, or of discrediting it. While it is true that the note sued on in the present case contained an express stipulation that the makers purchased on their own judgment and waived any guarantee as to the effects of the fertilizer on their crops, we think they were nevertheless entitled to show that their crops derived no benefit from the use of the fertilizer in question. It was competent for them to do this, not for the purpose of repudiating or varying the terms of their written contract, or of holding the guano company to a guarantee it had expressly declined to make, but to show that in point of fact the guano did not come up to the guaranteed analysis branded on the sacks, as required by law. In other words, it was the right of the defendants to show that this guano did not contain the chemical ingredients set forth in that analysis. If the guano failed to produce any beneficial effect on the crops under favorable auspices, this fact would at least tend to show it did not contain the fertilizing elements in the proportions specified in the analysis branded on the sacks.

In *Allen* v. *Young*, 62 *Ga.* 617, this court ruled that: " The effect of accepting a special guaranty that a fertilizer is of a given analytical standard, with restriction of the seller's liability accordingly, and excluding practical results, is to entitle the purchaser to a commodity

corresponding chemically in all respects to the standard. The means of test may not be exclusively direct; possibly there may be indirect means also; but actual production is neither, without evidence as to cultivation, season, soil, etc." In that case, BLECKLEY, Justice, said, in substance, that the effect of the fertilizer on the crops could not alone furnish the test of determining whether or not the fertilizer came up to the given standard. Again, in *Hamlin* v. *Rogers, Worsham & Co.*, 78 *Ga.* 631, it was said: "Where there is other testimony, as, for instance, where another analysis is put in evidence to show that the fertilizer does not come up to the standard laid down by the State chemist, those facts may be used in aid of such other analysis." In this latter case, the note given for the fertilizers expressly stipulated that the purchaser was to take the fertilizers without regard to their effect on crops. See the cases referred to on page 633 of the volume last cited; also, *Scott & Co.* v. *McDonald*, 83 *Ga.* 28. There are doubtless other decisions of this court which, either in terms or on principle, sustain what is now ruled on the point under consideration, but the above will suffice.

*Judgment reversed.*