THE HAMPTON GUANO COMPANY v. THE HILL LIVE-STOCK COMPANY.

(Filed 24 March, 1915.)

1. Vendor and Purchaser—Contracts—Fertilizers—Dealers—Breach of Warranty—Damages—Express Warranty—Parol Evidence.

In the sale of personal property the law will not imply a warranty at variance with that agreed upon between the parties, or permit parol evidence to vary or contradict the warranty expressed in a written contract of sale; and a written warranty in the sale of fertilizers by a manufacturer to a dealer therein, guaranteeing the fertilizer to be in accordance with the analysis printed on the sack, but not as to results from its use; that verbal promises conflicting with the terms of the contract were unauthorized, and would not be recognized, is held to restrict the warranty within the stated terms and to exclude parol evidence tending to show the warranty to have been otherwise.

2. Vendor and Purchaser — Contracts—Fertilizers—Dealers—Express Warranty—Implied Warranty.

Where a seller of fertilizer to a dealer warrants the goods only to be according to a given analysis, but not as to results, the law will not imply a further warranty that the fertilizers should be good for the purposes for which they were sold.

3. Vendor and Purchaser — Contracts—Dealers—Fertilizers—Express Warranty of Analysis—Evidence—Effect on Crops—Interpretation of Statutes.

Where fertilizers sold to a dealer are warranted only to contain ingredients according to a certain analysis, but not as to results, evidence of the effect of the fertilizer upon the crop is competent in an action upon the breach of warranty of sale when properly limited to the inquiry as to whether, under relevant and proper conditions, the ingredients of the fertilizers were according to the formula guaranteed, notwithstanding our statutes, Revisal, secs. 3445, 3957, making the analysis of fertilizers certified by the Department of Agriculture *prima facie* evidence of their contents.

4. Vendor and Purchaser — Dealers — Contracts—Fertilizer—Express Warranty of Analysis—Measure of Damages.

In an action upon a warranty in the sale of fertilizer to a dealer, that the fertilizers should contain ingredients according to an agreed formula, the damages, when recoverable, are limited to the difference between the value of the article delivered and its value or market price if it had been such as it was warranted to be.

5. Vendor and Purchaser—Contracts—Dealers—Fertilizers—Effect on Crop —Substantive Evidence.

Where in an action for damages upon a breach of warranty in the sale of fertilizer it is competent to show the use of the fertilizer upon lands and its effect upon crops, the evidence is substantive and not limited merely to purposes of corroboration: *Tomlinson v. Morgan*, 166 N. C., 557, cited and approved.

6. Vendor and Purchaser—Fertilizer—Warranty as to Analysis—Dealers— Warranty as to Results.

Where a dealer purchases fertilizer under a contract containing a warranty as to the analysis only, and sells them to users thereof with further warranty as to results, express or implied, his further warranty is made upon his own responsibility, and cannot affect the warranty under which he has purchased them.

APPEAL by plaintiff from *Whedbee, J.,* at November Term, 1914, of FRANKLIN.

Civil action. Plaintiff is a manufacturer of fertilizers, and defendant a merchant of Louisburg, who deals in fertilizers, selling them on credit to farmers. On 31 January, 1913, defendant purchased fertilizers from plaintiff under a written contract, the provisions thereof, material to this case, being as follows:

"And it is further understood and agreed that the fertilizer named is furnished with the guarantee of analysis printed on the sack, but not of results from its use. Verbal promises that conflict with the terms of this contract are unauthorized, and will not be recognized by this company."

Under this contract, in the spring of 1913, plaintiff shipped and delivered to defendant 80 tons of 8-2-2 fertilizer. On 1 July, 1913, in payment therefor, defendant executed to plaintiff notes aggregating $1,050.75, which said notes were indorsed by K. P. and J. P. Hill, and were payable in January and February, 1914. Upon maturity of said notes, and long after the crops, under which the fertilizer was used, had been harvested, defendant wrote plaintiff several times and promised to pay the notes, as will appear from letters written from January to May, 1914, and set out in the record. In January, 1914, defendant sought to renew its contract with plaintiff, and to purchase 250 tons of the same fertilizer (being over three times as much as it had purchased in 1913) under a contract identical with the first one; but plaintiff refused to ship the goods because defendant had not paid for those purchased under the contract above referred to. At no time prior to the institution of this action did defendants ever claim or contend that the fertilizer delivered in 1913 was defective in quality, or otherwise, or that they had any defense against said notes; on the other hand, they recognized their liability upon said notes and promised to pay the same, expressing regret that a scarcity of money had prevented them from making payment at maturity. Defendants failing to comply with their promises to pay said notes, this action was instituted on 18 June, 1914, to recover the amount due thereon. Defendants answered, admitting the execution and nonpayment of the notes, but pleading as a counterclaim that it had sold the fertilizer to its customers under warranties that the goods were in every respect highly efficient, suitable, and fit for the fertilization of the crops for which they were recommended; that their customers complained to them that the goods were not fit or suitable and did not measure up to the standard and quality warranted, and that defendant had suffered damage thereby.

Upon the trial defendant, over the objection of plaintiff, offered evidence from persons who had used fertilizers purchased from defendant in 1913, tending to show that the fertilizer so purchased was in bad mechanical condition, being lumpy and off color; that it did not assimilate or was not taken up by the soil and did not fertilize the crops; that they had used it under their crops with poor results and made bad crops, and that in their opinion the fertilizer was not worth as much as they were charged for it. Plaintiff objected to all this evidence, repeating the objections, until the court ruled that all such testimony should be considered as objected to. It was objected to, first, because the effect

thereof was to vary the written contract between the parties, which expressly provides that the plaintiff did not in any way guarantee the effect or results from the use of the fertilizer; second, because said testimony tended to set up a new contract guaranteeing results from its use, whereas the written contract expressly limited the warranty to the analysis appearing on the sacks; third, because said testimony in no way tended to show that the fertilizer did not contain the constituents in the quantities guaranteed by the analysis; fourth, because there was no evidence of any chemical analysis by the State chemist or other person, and that until such analysis was offered evidence as to its effect upon crops was incompetent and inadmissible; and fifth, because Revisal, secs. 3949-3951, as amended by Public Laws of 1911, ch. 92, provides that the analysis therein referred to is the best evidence of the contents of said fertilizers. There were some other specific grounds, not necessary to be stated. The contract between the parties was introduced in evidence, and shows that the fertilizer was guaranteed to contain the ingredients and in the proportion stated on the certificate of analysis printed on the sack before the sale by plaintiffs, which shows the contents to be 8 per cent of phosphoric acid, 2 per cent of ammonia, and 2 per cent of potash.

Plaintiff demurred *ore tenus* to the answer and counterclaim, upon the following grounds:

1. It failed to state or allege wherein the defendants, or either of them, had been damaged.

2. It fails to allege or state, except in general terms, that defendants, or either of them, have suffered any damage whatever, actual or special.

3. It fails to specify or allege any grounds upon which defendants base their claim for damages.

4. It fails to specify wherein defendants, or either of them, have been damaged in any manner whatsoever, even if the fertilizer was not as guaranteed in the contract.

5. It fails to allege that any chemical analysis has been made by the Agricultural Department, or any one else, and any of the ingredients found to be deficient.

6. It admits the execution of the contract containing an express warranty as to analysis as shown on the sacks, and no implied warranty as to results can be set up or considered.

The demurrer was overruled, and plaintiff excepted.

The jury returned the following verdict:

1. Are the defendants indebted to the plaintiff on account of the notes sued on, and if so, in what sum? Answer: "$1,060.28, with 6 per cent interest on $525 from 15 January, 1914, until paid, and 6 per cent interest on $525.75 from 14 February, 1914, until paid, and interest on $9.53 from 4 May, 1914, until paid."

2. Did the plaintiff warrant the fertilizer to contain 8 per cent available phosphoric acid, 2 per cent ammonia, and 2 per cent potash, and suitable for use as a fertilizer of crops? Answer: "Yes."

3. If yes, was said fertilizer, when delivered to defendant, as warranted? Answer: "No."

4. What damages, if any, are defendants entitled to recover of plaintiff? Answer: "$1,061.25."

The court gave the following instructions upon the second and third issues, to which exception was taken:

"The contract itself says that it is guaranteed, and warrants the purchaser that it contains 8 per cent phosphoric acid, 2 per cent ammonia, and 2 per cent potash, and the law says, in addition, that it is suitable for the purpose for which it is sold.

"If you believe this evidence, I charge you as a matter of fact to answer this issue 'Yes,' that the plaintiff did warrant the fertilizer to contain 8 per cent phosphoric acid, 2 per cent ammonia, and 2 per cent potash, and that it was suitable for use as a fertilizer of crops.

"If the evidence satisfies you by its greater weight that it did not contain 8 per cent phosphoric acid, 2 per cent ammonia, and 2 per cent potash, or that it was unfit for use as a fertilizer, and you are satisfied of either of these facts by the greater weight of the evidence, I charge you to answer the third issue 'No.'"

Plaintiff excepted to the judgment, which was entered upon the verdict, and appealed.

*A. C. & J. P. Zollicoffer and McIntyre, Lawrence & Proctor for plaintiff.*

*W. H. Yarborough, B. T. Holden, William H. Ruffin, and W. M. Person for defendant.*

Walker, J., after stating the case: When a person buys an article of personal property, he can require an express warranty as to its quality, or he may rely upon the warranty which the law implies in certain sales; but it has been well said that, "when he takes an express warranty, it will exclude an implied warranty on the same or a closely related subject. Thus an express warranty of quality will exclude an implied warranty of fitness for the purpose intended; but an express warranty on one subject does not exclude an implied warranty on an entirely different subject," an illustration of the latter being, that an express warranty of title will not exclude an implied warranty of soundness or merchantability. 35 Cyc., 392. It was held in the early case of *Lanier v. Auld*, 5 N. C., 138, "that the law will not imply what is not expressed, where there is a formal contract (Evans' Essay, 32; 1 Fonbl., 364; 6 Term, 606; Doug., 654), and an express warranty as to soundness and age ex-

cludes any implied warranty as to other qualities." What was said by *Justice Brown* in *Piano Co. v. Kennedy,* 152 N. C., 196, is very pertinent here: "We have recognized the principle that there can be no implied warranty of quality in the sale of personal property where there is an express warranty, and that where a party sets up and relies upon a written warranty he is bound by its terms and must comply with them (30 A. and E., p. 199; *Main v. Griffin,* 141 N. C., 43), and the further principle, applied by us in that case, that a failure by the purchaser to comply with the conditions of the warranty is fatal to a recovery for breach of the warranty in an action on it, or where, as in this case, damages for the breach are pleaded as a counterclaim in an action by the seller for the purchase money." "There are numerous well considered cases that an express warranty of quality will exclude an implied warranty that the articles sold were merchantable or fit for their intended use." *DeWitt v. Berry,* 134 U. S., 306. See, also, *Main v. Griffin,* 141 N. C., 43; *Robinson v. Huffstetler,* 165 N. C., 459; *Lumber Co. v. Machine Co.,* 72 S. E., 40. It has been held that an implied warranty cannot be set up, even under a code provision, where the parties, by their contract, have expressly agreed upon a different warranty, whether it be more or less extensive or limited. *Jackson v. Langston,* 61 Ga., 392; *Farmer v. Andrews,* 69 Ala., 96, and also that if a specific kind of fertilizer, or other article of a certain description or name, is ordered, there is no implied warranty of fitness, but only one that it is the kind designated. 35 Cyc., 409; *Raisin v. Conley,* 58 Md., 59; *Ober v. Blalock,* 40 S. C., 31; *Mason v. Chappell,* 15 Gratt. (Va.), 572; *Walker v. Pou,* 57 Md., 155; *Wilcox v. Owens,* 64 Ga., 601. A party who relies upon a written contract of warranty as to quality or description of the property he has purchased is bound by the terms of the warranty. *Machine Co. v. McKay,* 161 N. C., 586. He is not only held to the terms of the contract into which he has deliberately entered, but he is not permitted to contradict or vary its terms by parol evidence, as "the written word must abide" and be considered as the only standard by which to measure the obligations of the respective parties to the agreement, in the absence of fraud or mistake, or other equitable element. 35 Cyc., 379. There are numerous cases decided by this Court illustrative of this elementary rule in the law as to written contracts. *Moffitt v. Maness,* 102 N. C., 457; *Cobb v. Clegg,* 137 N. C., 153; *Basnight v. Jobbing Co.,* 148 N. C., 356; *Walker v. Venters,* 148 N. C., 389; *Medicine Co. v. Mizzell, ibid.,* 384; *Walker v. Cooper,* 150 N. C., 128; *Woodson v. Beck,* 151 N. C., 144; *Machinery Co. v. McClamrock,* 152 N. C., 405, and especially *Fertilizer Works v. McLawhorn,* 158 N. C., 275. There are authorities which hold that there is no implied warranty of quality in the sale of goods, but some of these are reviewed by this Court in the late case of

*Ashford v. Shrader,* 167 N. C., 45, and a warranty was said to be implied in certain excepted instances; but they all relate to contracts which do not contain any express warranty of quality. The subject is fully considered in that case, and further comment, therefore, is not required.

Let us now examine the facts of this case in the light of the foregoing principles. The main inquiry is as to the nature and scope of the special warranty and the rights and obligations of the parties springing therefrom. The warranty is made up of three elements: (1) That the fertilizer shall contain the ingredients in a specified proportion, as stated in the analysis printed on each bag. (2) That the seller should not be held responsible for results in its actual use. (3) That the whole contract is therein expressed, and all other terms are unauthorized. No language could be more explicit and no contractual obligation and right more definitely fixed. The warranty was drawn for the very purpose of preventing the recovery of such damages as are, in their nature, very speculative, if not imaginary, and out of all proportion to the amount of money or price received by the seller for the fertilizer. If fertilizer companies can be mulcted in damages for the failure of the crop of every farmer who may buy from them, they would very soon be driven into insolvency or be compelled to withdraw from the State, as the aggregate damages, if the supposed doctrine be carried to its logical conclusion, would be ruinous, and the farmers in the end would suffer incalculable harm. In view, then, of the probable results flowing from such a construction of the contract, we should hesitate very long before adopting it, with its disastrous consequences to both parties, which we cannot suppose they contemplated. The court, therefore, erred in charging the jury that if the fertilizer did not contain the ingredients, and in the quantities, as warranted, or if it was not suited to the purpose for which it was sold, they should answer the third issue in the negative, for the special warranty and the provisions against any liability for results excluded any implied warranty as to its suitableness for use in fertilizing crops. In *Allen v. Young,* 62 Ga., 617, where the contract and statute of the State were much like ours, it was said: "The notes given to the company for the price of the fertilizer having upon their face a stipulation that the fertilizer was purchased 'entirely upon the basis of the analytical standard guaranteed by the company, and that the buyer will in no event hold it responsible beyond such standard, nor in any wise for practical results,' the precise right of the purchaser was to receive an article containing the chemical and fertilizing properties enumerated in the guaranty, and these in the proportions and up to the degree of strength held out as a standard." The same Court, in that and other cases, discusses the competency and probative force of evidence as to the effect of the particular fertilizer, when used upon land, in producing crops, and

strongly intimates that such evidence is not admissible where the contract contains a provision that the seller is not to be liable for results, and that if it is competent, it should be received with caution and in connection with more direct evidence that the fertilizer did not contain the ingredients guaranteed by the analysis, or as much of them as the analysis and certificate required. *Hamlin v. Rogers,* 78 Ga., 631; *Scott v. McDonald,* 83 Ga., 28; *Jones v. Cordele Guano Co.,* 94 Ga., 14. The Court said in *Hamlin v. Rogers, supra:* "All the seller is required by law to do is to guarantee that the fertilizer contains the ingredients it is represented to contain. He may or may not guarantee its effect upon crops. Parties have a right to make their own contracts. Under the limited guaranty contained in the contract and that imposed by law, the defendant could have shown that the fertilizer did not contain the ingredients indicated by the analysis made by the State chemist." Our statute, Revisal, secs. 3445 to 3957, provides for an analysis by the Department of Agriculture of all fertilizers sold in the State, and makes the certificate of the State chemist *prima facie* evidence of their contents. We are of the opinion that, notwithstanding the stipulation as to nonliability for results, evidence of the effect of any particular fertilizer upon crops is competent, under certain conditions, to prove that it did not contain the guaranteed ingredients or in the proportion specified in the label put on the bag. The Court, in *Jones v. Cordele Guano Co., supra,* referring to a contract similar to the one in question, said: "While it is true that the note sued on in the present case contained an express stipulation that the makers purchased on their own judgment and waived any guarantee as to the effects of the fertilizer on their crops, we think they were nevertheless entitled to show that their crops derived no benefit from the use of the fertilizer in question. It was competent for them to do this, not for the purpose of repudiating or varying the terms of their written contract, or of holding the guano company to a guarantee it had expressly declined to make, but to show that in point of fact the guano did not come up to the guaranteed analysis branded on the sacks, as required by law. In other words, it was the right of the defendants to show that this guano did not contain the chemical ingredients set forth in that analysis. If the guano failed to produce any beneficial effect on the crops under favorable auspices, this fact would at least tend to show it did not contain the fertilizing elements in the proportions specified in the analysis branded on the sacks." But when there is an offer of such evidence, the kind of soil, manner of cultivation, accidents of season, and other pertinent facts should be first shown, so that a foundation may be laid for admitting testimony of actual production, with a view of disparaging the fertilizers, and the jury should be carefully instructed that they can consider the evidence only for the purpose of showing the absence of the guaranteed

168—29

ingredients or the represented quantities of each, and not at all for the purpose of assessing damages, either directly or indirectly, because of any loss or diminution of the crops, as the measure of damages depends upon quite a different principle.

The extent of the recovery must be restricted to the difference, not necessarily between the price and the value of the article purchased, but to the difference between the article delivered under the contract of warranty and its value or market price if it had been such as it was warranted to be. *Mfg. Co. v. Oil Co.*, 150 N. C., 150, citing *Parker v. Fenwick*, 138 N. C., 209 ; *Marsh v. McPherson*, 105 U. S., 709, and *Mfg. Co. v. Gray*, 129 N. C., 438. The principle is thus stated in 35 Cyc., p. 468 : "The general rule as to the measure of damages on a breach of warranty is that the buyer is entitled to recover the difference between the actual value of the goods and what the value would have been if the goods had been as warranted, and in the application of the rule it is held that the fact that the goods were actually worth the price which was paid for them is immaterial. The difference between the purchase price and the actual value cannot be regarded as the measure of damages, as in such case the purchaser recovers too small a sum if he has made a bad bargain and paid more than the goods were worth, and too great a sum if he has made a good bargain, paying less than the goods were worth. It is true that in some cases the rule has been stated that the measure of damages is the difference between the purchase price and the actual value of the goods, but in nearly all of these cases the theory undoubtedly is that, in accordance with the general rule, if there is no other evidence of the actual value of the goods, the purchase price will be regarded as such value." The elementary rule as above stated is the best rule, leaving the price to be considered, when necessary, in the final adjustment between the parties to ascertain what is due by one to the other on account of the transaction, when there has been a breach of the warranty. We have mentioned this subject for the purpose of showing that no part of the recovery, under this contract, should be assessed for the failure of crops, as there is an express stipulation that plaintiff should not be held liable for any results from the use of the fertilizer, and the charge in this respect was erroneous. This Court said in *Fertilizer Works v. McLawhorn*, 158 N. C., 274, 276 : "The deficiency in value was allowed him in abatement of price. The claim of consequential damages resulting in the alleged shortage in his crop was properly disallowed by the court. *Carson v. Bunting*, 154 N. C., 532, where the Court holds that the measure of damages is in the abatement of the price, as is also provided by Revisal, 3949."

It must not be understood that we are dealing with a case where a farmer is suing his merchant for a breach of contract in the sale of fer-

tilizers, alleging that they were deficient in quality and thereby he has sustained a loss or diminution of his crop in the cultivation of 'which it was used. The sale in such a case may have been made upon an express or an implied warranty as to the quality of the fertilizer, and does not fall within the principles we have discussed. With reference to such a case, *Justice Hoke* said in *Tomlinson v. Morgan,* 166 N. C., 557 : "The Court does not understand that plaintiff seriously contends that a warranty has not been established by the verdict, but it is chiefly urged for error that there is no proper evidence tending to show a breach of the warranty, *i. e.,* that the guano sold was off-grade, and, second, that under our decisions a loss claimed in diminution of the crop is too remote and uncertain.to be made the basis for·an award of damages. Undoubtedly, a counterclaim of this character presents such an inviting field for litigation and is so liable to abuse that it should not be entertained unless it is clearly established that there has been a definite breach of the warranty and satisfactory evidence is offered that the loss claimed is directly · attributable to the breach, and the amount can be ascertained with a reasonable degree of certainty. While the court should always be careful to see that these rules are not transgressed to the injury of a litigant, when the facts in evidence clearly meet the requirements, authority in this State is to the effect that the loss suffered in diminution of a given crop, when it is clearly attributable to a definite breach of warranty as to the quality of a fertilizer, and is within the contemplation of the parties and capable of being ascertained with a reasonable degree of certainty, may be made the basis for an award of damages," citing *Herring v. Armwood,* 130 N. C., 177; *Spencer v. Hamilton,* 113 N. C., 49.

The *Tomlinson case,* it has been suggested, is somewhat in conflict with our views, but we think it clearly is not, but entirely consistent therewith. In that case it appeared that there was an express warranty "that the fertilizer was suitable· for tobacco," which meant, if properly construed, that if it was used in the cultivation of tobacco it would produce good results and increase the yield. Besides, there was no limited warranty, as in our case, and no restriction of liability for results, and it appeared, that a member of the plaintiff's firm had said that he had seen as much as he had wanted to see, and he thought there must have been a mistake made in the factory by putting in acid instead of phosphate. These facts show a radical difference between the two cases. If the merchant who buys from the fertilizer company chooses to sell to the farmer with a warranty different from that which has been given to him, and broader in its scope, he may do so, but he cannot thereby increase the liability of the fertilizer company upon its warranty to him. That will remain as fixed by the terms of the contract, and will not be altered by any future conduct or action of the merchant in his dealings with others.

The effect of the judge's instruction upon the third issue, which, by the way, is not in proper form, was to add a term to the contract not inserted therein by the parties, and to charge the defendant upon a warranty, for the performance of which he was not bound and for any breach of which he was, therefore, not liable.

It has been suggested that the Court, in *Jones v. Cordele Guano Co., supra,* decided that evidence as to the use of the fertilizer upon lands and its effect upon crops was admissible only as corroborative or discrediting testimony, after there had been evidence of any analysis of the fertilizer, but we think it is substantive evidence, and for the reason given by the Court in that case for admitting it as corroborative. It has been held to be substantive evidence in *Tomlinson v. Morgan,* 166 N. C., 557. Cervantes wisely said, in his *Don Quixote,* that "the proof of the pudding is the eating," and so by analogy the proof of the fertilizer is the using of it. It is practical instead of scientific proof, but the evidence should be admitted cautiously and with proper and full safeguards, so as, by eliminating the speculative elements, to show clearly the causal connection between the fertilizer used and the loss or diminution of the crop. Unless the foundation for such proof is well laid, it lacks in probative force, as it has not been removed from the realm of speculation and is only conjectural and, of course, unreliable.

We direct that there must be a new trial because of the errors indicated.

New trial.