THE MURRAY COMPANY v. BROADWAY AND LANGSTON.

(Filed 9 October, 1918.)

**1. Vendor and Purchaser—Contracts, Written—Parol Evidence—Warranty —Defense—Counter-claim.**

· Where a written contract of sale of a cotton ginning outfit contains the stipulation that the purchaser should provide sufficient motive power for its operation, if the same were not furnished by the seller, and the purchaser has undertaken to provide the same, with further stipulation that the writing is exact and entire, and no agreement or understanding, verbal or otherwise, will be recognized unless therein contained: *Held,* parol agreements as to the daily capacity of the gin operated by a certain engine the purchaser had used under the salesman's representation as to its sufficiency for the purpose, is contradictory of and excluded by the terms of the writing; and in the absence of sufficient allegation or evidence to cancel the writing or of fraud and deceit, the parol agreement is not available to the purchaser either by way of defense or counterclaim for damages sustained.

**2. Contracts—Fraud—Evidence—Parol Evidence.**

The rule permitting parol evidence to contradict the terms of a written instrument attacked for fraud in its procurement has no application when there is no allegation or sufficient evidence of such fraud, and the effect of parol evidence is only to vary the terms of the agreement as expressed in the writing. *Bullock v. Machine Co.,* 161 N. C., 13; *Machine Co. v. Feezer,* 152 N. C., 516, cited and applied.

ACTION tried before *Calvert, J.,* and a jury, at February Term, 1918, of LENOIR. .

The action was to recover the balance due on the last note given on purchase price of a ginning outfit sold by plaintiff to defendant. Defendant denied liability and set up a counter-claim in excess of any balance due. On issues submitted, there was verdict for plaintiff for $183.95, the balance due on the purchase price.

Judgment for plaintiff, and defendant excepted and appealed.

*J. F. Liles for plaintiff.*
*Rouse & Rouse for defendant.*

HOKE, J. The evidence on the part of plaintiff tended to show that in April, 1914, he sold and delivered to defendant a ginning outfit consisting of two gins, elevator, press and necessary equipment for the sum of $1,483.72, $516.92 being paid in cash, and the balance due and payable, respectively, on 15 November, 1914, and 15 November, 1915; that the first note has been paid off and discharged and payments made on the second, leaving a balance due thereon of $183.95; that soon after the sale had, the machinery was delivered and installed, and later defendants gave to plaintiff a certificate in terms as follows:

"The Murray Company, Atlanta, Ga. Gentlemen: This is to certify that the machinery sold the undersigned on contract 538 has been erected in good workmanlike manner in our plant. The same is complete, is in good order and in accordance with the terms of the contract, and is hereby accepted. We have settled in full with your Mr. Frazier the sum of $80 for the erection of the machinery" (making it more compact); that the contract between the parties was in writing, and same contained, among other stipulations, the following:

(*a*) "If the engine or boiler is not furnished by the Murray Company, then we agree to provide motive power of sufficient capacity to drive machinery specified herein (the Murray Company to be held in no manner responsible if insufficient), and arrange to run the line of shaft the speed required by the Murray plans"; and at the close of the contract:

"It is hereby expressly agreed that the above and foregoing is the exact and entire contract between the purchaser and the Murray Company, and that no agreement or understanding, verbal or otherwise, will be recognized unless specified in this contract, which includes the warranty as above stated."

Defendants, admitting the purchase, delivery and use of the machinery, and that there was a balance due on the face of the notes, alleged by way of counter-claim and offered evidence tending to show that at the time of the purchase and as an inducement thereto and as a part of the consideration of the same, plaintiff's agent in charge of the sale had reported to defendants that a certain 35-horsepower kerosene engine made by the International Harvester Company and sold by one H. H. Grainger would properly and sufficiently operate said ginning plant and outfit, and orally contracted and agreed that said outfit when operated by said engine would have the capacity to gin, and would gin, daily twenty-five to thirty bales of lint cotton, and that the power furnished would be ample for the purpose; that in reliance upon said representation and contract, said engine was procured and the gins, etc., operated therewith, but that the same had never been sufficient to operate said gins and they had never been able to produce more than ten or twelve bales per day.

Owing to the long delay and protracted use of the machinery without protest on the part of defendants, it is no longer open to them to set aside this trade on the ground of fraud, and they do not seek to do so, and while there are accompanying this counter-claim, general averments that the defendants were entirely ignorant of the nature and value of machinery and relied on the statements and representations of plaintiff's agent, etc., inducing the trade there is neither allegation nor evidence on the part of defendants to justify a recovery of damages for

fraud and deceit, a course sometimes open to a purchaser when such fraud and deceit is sufficiently alleged and established (*May v. Loomis,* 140 N. C., 350; *Van Natta r. Snyder,* 98 Kan., 102), and in their principal answer defendants have only set up a counter-claim for breach of warranty in that the engine would not properly operate the machinery nor give the amount of twenty-five or thirty bales per day.

Confronted in the written contract with an express stipulation that plaintiffs (if engine was purchased from others) would not be responsible if same was insufficient, defendants, on leave, had amended their answer and alleged that this stipulation was inserted in the contract by mutual mistake of the parties or by mistake of the defendants and the fraud of plaintiffs.

On the issue raised by this averment, we find no evidence whatever to support the position that there was any mistake on the part of plaintiffs in this feature of the contract, and we are inclined to concur in his Honor's view that the evidence offered is entirely insufficient to show any fraud in this respect on the part of plaintiff; but if it be conceded that there was such evidence and sufficient to carry the question to the jury on a proper issue, there is no allegation of either mistake or fraud in regard to the remaining stipulation at the close of the written contract between the parties, "That no agreement or understanding, verbal or otherwise, will be recognized unless specified in this contract, which includes the warranty above stated." Nor is there allegation, evidence, or claim, that the stipulation relied upon as the basis of defendant's counter-claim appears anywhere in the written contract.

Defendant's case, then, is merely a counter-claim for breach of an oral agreement in direct contravention of the written contract, and in our opinion comes clearly within the principles of *Machine Co. v. Mc-Clamock,* 152 N. C., 405, and other cases in accord with that well considered decision, that where a written agreement of this character stands as the contract between the parties it excludes from consideration any and all breaches of parol agreements either by way of defense or counter-claim. *Harvester Co. r. Carter,* 173 N. C., 229, 231; *Guano Co. v. Live-stock Co.,* 168 N. C., 447; *Simpson r. Greene & Sons,* 160 N. C., 31.

The position in no way antagonizes the decisions in *Bullock v. Machine Co.,* 161 N. C., 13, and *Machine Co. r. Feezer,* 152 N. C., 516, and others of like purport. In these cases the written contracts were set aside for fraud, definitely alleged, clearly established, and promptly asserted, and it was held that the stipulations contained therein restrictive of the agent's power to bind or in any way affect the principal failed with the contract of which they were a part.

In *Bullocks' case, supra,* it was held as follows: "The principle that a written contract may not be contradicted or varied by parol evidence

has no application when the writing itself is attacked for fraud; for if the contract is vitiated by fraud, its provisions are carried with it, and a clause in a contract of sale that it may not be varied by the representations of the sales agent cannot have any effect if the contract itself fails."

A like ruling was made in *Machine Co. v. Feezer, supra,* and speaking to the question in the opinion the Court said: "In the case at bar, as soon as the purchaser discovered the defects complained of, and was aware of the facts relevant to the issue, he immediately restored the property to the company's agent 'in as good a condition as when he got it,' and having done this and pleaded and established the fraud in annulment of the trade, the restrictive stipulations are, as stated, no longer available. To hold the contrary would be to sanction the principle that the deeper the guilt the greater the immunity, and enable fraud by its own contrivances to so entrench itself that its position would in many instances be practically unassailable."

In the instant case, however, as stated, the contract stands and the rights and liabilities of the parties must be governed by its terms and provisions.

There is no error and the judgment of the Superior Court is affirmed.

No error.