FEIBUS & COMPANY, INC. (N. C.) (FORMERLY F. G. REALTY CORPORATION) v. GODLEY CONSTRUCTION COMPANY, INC., M. R. GODLEY AND F. O. GODLEY

No. 7926SC233

(Filed 4 December 1979)

1. **Rules of Civil Procedure § 6— order signed out of term and district**

Where the trial judge denied defendant's motion for summary judgment during term, the court could thereafter sign the order out of term and out of the district. G.S. 1A-1, Rule 6(c).

2. **Fraud § 12— drainage pipe metal instead of concrete—no actionable fraud**

In an action to recover damages for the collapse of a portion of a building which had been constructed over an underground corrugated metal drain pipe, representation by defendant that the pipe was concrete did not constitute actionable fraud, since the evidence tended to show that the way in which the pipe was installed rather than the kind of pipe created the problem.

3. **Limitation of Actions § 4.2— negligent construction of drainage line—action barred by statute of limitations**

Plaintiff was not entitled to go to the jury on issues raised as to the alleged negligent construction of a drainage line and fill over which defendants built a warehouse for plaintiffs, since all construction on the drainage pipe was completed before defendants had any relationship with plaintiff; no duty lay between defendants and plaintiff at the time of the construction; the installation of the pipe was completed no later than February 1965 and by February 1968 the statute of limitations had run; and the cause was not revived by the ratification of G.S. 1-15(b).

4. **Sales § 6.3— warehouse—implied warranty of fitness—statute of limitations**

In an action to recover damages for the collapse of a portion of a building which had been constructed over an underground drainage pipe, plaintiff's cause of action based upon a breach of implied warranty of fitness of the building for the purpose for which it was sold and intended to be used was barred by the statute of limitations.

APPEAL by plaintiff from *Griffin, Judge.* Judgment entered 26 October 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 25 October 1979.

The plaintiff, Feibus & Company, Inc., is engaged in the textile waste business. Defendant, Godley Construction Company, Inc., is a construction company located in Charlotte. The individual defendants, F. O. Godley and M. R. Godley, are stockholders in the construction company. F. O. Godley is also an

officer. The defendants are land developers and building contractors.

In February, 1965, the plaintiff entered into two sealed contracts — one with the individual defendants for exchange of real estate, the other with the corporate defendant whereby the corporation agreed to construct a building on the land received in the exchange. The building was occupied by the plaintiff in August, 1965, and finally completed in 1967.

On 18 June 1975, a portion of the building collapsed causing severe damage. The collapsed portion had been constructed over an underground corrugated metal drain pipe which had been previously installed at the request of the individual defendants under agreement with an independent contractor who is now deceased.

Plaintiff repaired the lands and building located thereon and brought suit against the defendants as joint venturers.

The complaint of the plaintiff set out three causes of action:

In the first cause the plaintiff alleged fraud, charging that defendant had misrepresented and concealed the nature of a drain pipe, the improper installation of the pipe, and the nature of the fill over it. The pipe was located on the lands sold by the individual defendants to the plaintiff for the location of a building thereon, which building was constructed by the corporate defendant.

The second cause of action was based on alleged negligence in the construction of the fill upon which the building was constructed and the drain culvert which ran under the property.

A third cause of action was based upon a breach of implied warranty of fitness of the building for the purpose for which it was sold and intended to be used.

Prayer for relief sought damages in the sum of $250,000 against the defendants.

The defendants denied the allegations of the plaintiff and pleaded various statutes of limitations, including G.S. 1-50, G.S. 1-15, and G.S. 1-52.

Thereafter, the defendants filed a motion for summary judgment, which was denied by Judge Kirby. A petition for writ of certiorari was denied by this Court.

Upon trial, at the conclusion of the plaintiff's evidence, the defendant moved for a directed verdict to all three causes under Rule 50. The motion was allowed by Judge Griffin.

Plaintiff appealed.

*Hasty, Waggoner, Hasty, Kratt & McDonnell, by William J. Waggoner and John H. Hasty, for plaintiff appellant.*

*Jones, Hewson & Woolard, by Hunter M. Jones and William L. Woolard, for defendant appellee.*

HILL, Judge.

The record, together with the briefs, presents to this Court a lengthy set of documents for consideration. However, although three causes of action are alleged and eight questions presented for consideration, the conclusions of law follow well accepted principles.

[1] The defendant moved for summary judgment under Rule 56, together with a motion to strike portions of plaintiff's affidavits. The motion was denied by Judge Robert Kirby, who directed plaintiff's counsel to reduce the denial to a written order and address it to his home in Cherryville for signature. The session of court was then adjourned on that day.

Defendants excepted to the executed order of Judge Kirby, contending that it was invalid because signed out of term and out of district without defendant's consent.

Rule 6(c) of the North Carolina Rules of Civil Procedure clearly permits such acts to be done. Judge Kirby did not hear the motion out of term and district. He gave his decision in term and simply documented his decision by signing the order and mailing it to the clerk of court after the term had expired. Hence, the objection of the defendants is groundless.

Plaintiff's evidence tended to show that on 29 June 1964, Robert T. Godley acting on behalf of Godley Construction Company, wrote a letter to the corporate predecessor of the plaintiff stating, among other things, that:

Specialists handle all details—planning, site selection, design and specs, financing, and construction. This service frees the business owner from tedious details.

As a result of the letter, the plaintiff and defendant began negotiations for a warehouse. Two contracts were signed: one with the individual defendants for an exchange of real estate, and a second for construction of a building by the corporate defendant on the exchanged land.

Lionel Feibus, an officer of the plaintiff corporation, testified that he did not remember whether he became aware of the drain line traversing the property before or after the contracts were signed. However, he testified that plaintiff's attorney wrote him a letter dated 2 March 1965 stating that:

[T]here is a buried 60-inch concrete drain extending through the center of the property . . . and will lie under the contemplated building. We are advised by the surveyor that this pipe is buried 40 feet in the ground and would, therefore, not constitute any objection to the contemplated use of the property.

Feibus contacted F. O. Godley who advised him substantially as follows:

[D]on't worry about it. Every city in the world is run with the same kind of culverts, and nothing happens. This [pipe] is very deep in the ground and concrete and there is nothing to be concerned about.

Subsequently, F. O. Godley told plaintiff's agents the pipe was of reinforced concrete and 60 inches in diameter. On other occasions the pipe was represented to be 40 inches in diameter. One time it was stated that the pipe had been installed for three or four years, another time twelve years. It was represented that the property had never flooded; that the water had not been high enough where you could tell it; that very little water flowed through the pipe; that the soil was compacted, would not settle, and as good as virgin soil.

Surveys of the property showed the pipe traversed the property under the site of the proposed building; that the pipe was not 40 feet below the surface, but only 27 feet; and that the land

conveyed to plaintiff contained five acres and not seven (adjustment in construction cost of the building offset the shortage in acreage).

Plaintiff contends that he relied on the statements by Mr. F. O. Godley and proceeded with the construction. Financing was arranged with Liberty Life Insurance Company which raised a question concerning the location of the drain line. A core drilling of the area revealed that the fill consisted of sand, mixed silt, and some organic material. Thereafter, the loan for permanent construction was closed with Liberty Life. The building was constructed over the drain line and could not be located elsewhere because of a railroad siding.

In June, 1975, a portion of the building's floor collapsed, at which time it was discovered that the drain line consisted of a 36-inch and 48-inch metal corrugated pipe, rather than a 60-inch concrete pipe.

Plaintiff's testimony showed that the metal pipe was improperly installed. No bedding had been provided, and the fill dirt on top of the pipe consisted of silt, sand, organic material, and some clay. The sections of the pipe were joined by belting, not by collars. As a result of the weight of the soil above the pipe and the manner in which the pipe was installed, the pipe flattened, creating cracks in the joints, and permitting the soil to ravel (erode) above the pipe and into it. Over the years the cavity above the pipe became increasingly larger. Finally, the floor of the building collapsed.

Plaintiff's expert witness testified that the cave-in would not have been avoided by the use of concrete pipe instead of metal pipe. He testified, "It wouldn't have made any difference, the critical thing was the way it was installed."

The representations as to the character of the fill were alleged to be in three parts:

    (1) that the pipe had been installed as few as three years or as many as twelve years earlier;

    (2) that the fill was compacted; and

    (3) that it was as good as virgin soil.

Although the exact time that the pipe was installed is uncertain, this is not material. There was no evidence that the statement concerning the compaction of the soil was false. The third statement is obviously a statement of opinion.

There was other testimony concerning the case, all of which has been considered, but the foregoing gives us the basis for decision. We must decide if there was sufficient evidence of fraud to withstand the defendant's motion for a directed verdict on the first cause of action. We hold that there was not.

While the broad outlines of fraud have been indicated by regarding it as including any cunning, deception, or artifice used, in violation of a legal or equitable duty, to circumvent, cheat, or deceive another, the forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise, and the courts consider it unwise or impossible to formulate an exact, definite and all inclusive definition thereof. 37 C.J.S. Fraud § 1, p. 204.

Various statements of the elements of actionable fraud have been made, the most comprehensive one including the making, falsity, and materiality of a representation, the speaker's knowledge of its falsity or ignorance of its truth, his intent that it should be acted on by the person and in the manner reasonably contemplated, the hearer's ignorance of its falsity, his rightful reliance on its truth, and his consequent and proximate injury. 37 C.J.S. Fraud § 3, p. 215.

Justice Adams in *Electric Co. v. Morrison*, 194 N.C. 316, 317, 139 S.E. 455 (1927), defined fraud as follows:

The essential elements of actionable fraud or deceit are the representation, its falsity, scienter, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss.

Not all misrepresentations are fraudulent, and all of the essential elements thereof must be present to have actionable fraud.

> Representations are likewise immaterial if they caused no injury, or if they were mere expressions of opinion on which the hearer had no right to rely. 37 C.J.S. Fraud § 18, p. 253.

> [T]he question is not whether the hearer believed the representation material but whether it was in fact material. 37 C.J.S. Fraud § 18, p. 254.

[2] The thrust of plaintiff's first cause of action is based upon the misrepresentations by the defendant concerning the type of pipe; that the underground pipe carrying drainage was of concrete when in fact it was of metal. However, the record shows the type of pipe is not the problem. The pipe was not properly bedded, and the weight of the soil caused the pipe to partially collapse and come apart at the seams where it was not properly joined together. The soil from above was sandy and silt-like, and raveled (eroded) through the seams, causing a cavity above the pipe which over the years grew into such dimensions that it caused the floor of the building to collapse.

Hence, the representation that the pipe was concrete did not constitute actionable fraud.

Since we are of the opinion there is no actionable fraud as to the first cause of action, we will not address the question of the statute of limitations as to this first cause of action.

[3] As to the second cause, was the plaintiff entitled to go to the jury on issues raised as to the alleged negligent construction of the drainage line and the fill over it?

All construction was done before the defendants had any relationship with the plaintiff. No duty lay between the defendants and the plaintiffs at the time of construction of the drainage line and the fill—all of which was done at least four years before 1965, the year any purported obligations could have arisen. Plaintiffs are not privy to any contract affecting construction of the drain line and the fill thereover.

Plaintiff treats this cause of action as one in tort based on negligence. It is clear from *Ports Authority v. Roofing Co.*, 294 N.C. 73, 83, 240 S.E. 2d 345 (1978), that no tort action ". . . lies against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill." It

is equally clear that plaintiff would have no cause of action against the estate of the independent contractor. *See Ports Authority*, at pp. 87-89.

Plaintiff is not basing his tort claim on the breach of any contract. The claim is based solely on defendant's negligent installation of the drainage pipe. However, the claim is barred by G.S. 1-52(5). *See Sellers v. Refrigerators, Inc.*, 283 N.C. 79, 194 S.E. 2d 817 (1973).

The installation of the pipe was certainly completed no later than February, 1965. By February, 1968, the statute had run and plaintiff's action was barred. The cause was not revived by the ratification of G.S. 1-15(b). *See Jewell v. Price*, 264 N.C. 459, 461, 142 S.E. 2d 1 (1965). Even if G.S. 1-15(b) did apply in this case, plaintiff's cause would be barred by the ten-year limitation.

[4]   As to the third cause of action, likewise the action should be dismissed.

[A] vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession. RESTATEMENT (SECOND) OF TORTS § 352 (1965).

The official comment to § 352 indicates that the doctrine of *caveat emptor* still retains much of its original force in contracts for the sale of land and that the implied warranties which have grown up around the sale of chattels have never developed in sales of land.

Furthermore, if an implied warranty could be said to exist in sales of land where there is an express warranty relating either to the fitness of the article sold or to a subject closely related thereto, no warranty can be implied. 164 A.L.R. 1328 (citing North Carolina cases). *Also see* 11 Strong, N.C. Index 3d, Sales § 6, p. 393.

Plaintiff, of course, argues that the express warranty applies only to the building itself and not to the condition of the land. Implied covenants can arise and prevail where there is no expression on the subject matter of the implied covenant. See 20 Am. Jur. 2d, Covenants, Conditions and Restrictions § 12, p. 585.

. . . [A]n express warranty on one subject does not exclude an implied warranty on an entirely different subject . . . .

*Hyman v. Broughton*, 197 N.C. 1, 3, 147 S.E. 434 (1929), *citing Guano Co. v. Live Stock Co.*, 168 N.C. 442, 84 S.E. 774 (1915).

However, we need not decide whether an implied warranty existed. The third cause of action—if it existed—is barred by the statute of limitations.

For the reasons set out above, the judgment entered by the trial judge is

Affirmed.

Judges VAUGHN and ERWIN concur in the result.